WELLS' DAIRY, INC., Plaintiff,

v.

THE ESTATE OF J.P. RICHARDSON, Jr., a/k/a Richardson Family Trust, p/k/a "The Big Bopper,", Defendant.

No. C99–4049.

United States District Court,
N.D. Iowa,
Western Division.

March 16, 2000.

---

Tim Zarley of Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, IA, for Plaintiff.

David W. Showalter, TX, for Defendant.

**MEMORANDUM OPINION AND ORDER REGARDING DEFEN- DANT'S MOTION TO DISMISS**

BENNETT, Chief Judge.

TABLE OF CONTENTS

I. *INTRODUCTION* ...................................................... 1045
 A. *Procedural Background* ........................................ 1045
 B. *Factual Background* ........................................... 1046

II. *LEGAL ANALYSIS* .................................................. 1046
 A. *Subject Matter Jurisdiction* ................................. 1046
 1. *The jurisdictional amount in controversy* ................ 1046
 2. *Federal question jurisdiction* ........................... 1047
 B. *Personal Jurisdiction* ....................................... 1047
 1. *Long–arm authority* ...................................... 1048
 2. *Minimum Contacts* ........................................ 1049
 a. *Specific v. general jurisdiction* ................... 1049
 b. *The five factor test* .............................. 1050
 C. *Venue* ....................................................... 1052
 1. *Improper venue* .......................................... 1052
 2. *Forum non conveniens* .................................... 1054
 a. *Private Interest Factors* .......................... 1056
 b. *The public interest factors* ....................... 1057
 D. *Brillhart Abstention* ........................................ 1057
 E. *Injunction* .................................................. 1061
 1. *Necessary in aid of the court's jurisdiction* ........... 1063

III. *CONCLUSION* ..................................................... 1065

What do the third most played song of 1958, and the ice cream capital of the world have in common? Give up? The answer is the Big Bopper. "Chantilly Lace," a top ten hit in 1958, was written and performed by J.P. Richardson, Jr., known as "The Big Bopper." LeMars, Iowa, "the ice cream capital of the world," is home to Wells' Dairy, Inc., which started making an ice cream sandwich called "Big Bopper" in 1996. Whether the court will ultimately declare just who has rights to the name "The Big Bopper" or "Big Bopper," is contingent upon several issues, all of which will be addressed below.

## I. INTRODUCTION

### A. Procedural Background

On June 2, 1999, plaintiff Wells' Dairy, Inc., ("Wells"), filed its complaint in the Northern District of Iowa seeking declaratory judgment that use of its federally registered trademark, Reg. No. 2,031,929, did not violate or misappropriate any property interest owned by the defendant, The Estate of J.P. Richardson, Jr., a/k/a Richardson Family Trust, p/k/a "The Big Bopper," ("the Richardson Estate"). In short, Wells seeks declaratory relief to determine the rights to the use of the "Big Bopper" name. Thereafter, on June 18, 1999, the Richardson Estate filed a complaint in Texas state court against Wells based on a Texas state property statute, which is likewise pending. On August 2, 1999, the Richardson Estate filed a motion to dismiss the action in the Northern District of Iowa for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue. On November 5, 1999, Wells filed a resistance to the Richardson Estate's motion to dismiss, contending that it is without merit. Wells contends that the amount in controversy meets the jurisdictional requirement, that the Richardson Estate has sufficient minimum contacts within the state of Iowa to establish personal jurisdiction, and venue is proper in Iowa since the events that gave rise to this action occurred in Iowa. On November 26, 1999, the Richardson Estate filed a reply to Wells's resistance to the motion to dismiss. Thereafter, on January 14, 2000, Wells amended its original declaratory judgment civil complaint to more accurately identify the parties and assert an additional basis for jurisdiction.[1] Specifically, Wells substituted the named defendant with Jay Perry Richardson a/k/a J.P. Richardson, Jr., individually and as assignee of the interest of Adrianne Joy Richardson Wenner, and Jean Barrow as Guardian of Debra Richardson (hereinafter collectively referred to as "the Richardson Estate"), and expressly stated that jurisdiction is proper because federal questions under 15 U.S.C. § 1051 *et seq.* of the Lanham Act are present.

On February 3, 2000, the Richardson Estate responded to plaintiff's amended complaint and filed an amended motion to dismiss. In this motion, the Richardson Estate supplemented their original grounds for dismissal in light of the amended complaint and raised two alternative grounds for dismissal, which include *forum non conveniens,* and an exception to the "first-filed" rule. Shortly thereafter, on February 8, 2000, Wells filed a motion requesting the court to enjoin the Richardson Estate from proceeding with its duplicative action in Texas under the "first-filed" rule, as well as resisting the Richardson Estate's amended motion to dismiss. On February 24, 2000, the Richardson Estate filed a resistance to plaintiff's motion requesting the court to enjoin them from proceeding with the Texas action, contending that there exist circumstances in this case that warrant departure from the "first-filed" rule.

Plaintiff Wells requested oral argument on the motion to dismiss. The court granted that request and held arguments on defendant's motion on January 13, 2000. At the hearing, plaintiff Wells was represented by Tim Zarley of Zarley, McKee, Thomte, Voorhees & Sease, of Des Moines, Iowa. Defendant Richardson Estate was represented by David W. Showalter of Bellaire, Texas. The court, however, deferred ruling on the motion to dismiss in light of the amended complaint, the amended motion to dismiss, and the subsequent motion to enjoin the action in Texas. The court will address all of these issues, including the "first-filed" rule and its application, in the foregoing analysis concerning the Richardson Estate's motion to dismiss.

---

**1.** The plaintiff's January 14, 1999, amended complaint, although timely, was not filed until February 9, 2000. The court concludes that plaintiff was not required to seek leave of the court to file its amended complaint because the defendant had not filed a responsive pleading. FED.R.CIV.P. 15(a).

## B. Factual Background

Plaintiff Wells' Dairy, Inc., is an Iowa corporation with its principal place of business in LeMars, Iowa. The defendant, which the court collectively refers to as the Richardson Estate, consists of the heirs of J.P. Richardson, Jr., namely, his son, Jay Perry Richardson, his wife Adrianne Richardson Wenner, and his daughter, Debra Richardson Bridges, all of whom reside in the state of Texas. J.P. Richardson Jr., otherwise known as "The Big Bopper," a famous musician best known for his hit "Chantilly Lace," died in a plane crash near Clear Lake, Iowa, on February 3, 1959. Perishing with "The Big Bopper" were rock sensations Buddy Holly and Ritchie Valens. At the time of their death, all three musicians, while not of equal prominence, left an indelible mark in the music and entertainment industry. Consequently, February 3, 1959, became known as "the day the music died." <http://www.officialbigbopper.com/story.htm>.[2]

On or about April 22, 1996, Wells began to commercially use the name "Big Bopper" to identify ice cream novelties, namely its large size chocolate chip cookie ice cream sandwich. On or about January 1, 1997, Wells received Registration No. 2,031,929 from the United States Trademark Office for a registration on the Principle Register of "Big Bopper" for such ice cream novelties and frozen confections. Thereafter, on or about April 30, 1999, Wells received a cease and desist letter from attorney David Showalter, who represents the heirs of the Richardson Estate, requesting that Wells cease using its trademark and pay restitution to the Richardson Estate for the unauthorized use of the name "Big Bopper" on its ice cream products. Receipt of this letter precipitated Wells to file suit.

**2.** Musician Don McLean wrote and sang the song entitled "American Pie," which coins the phrase "the day the music died." The entire song is a tribute to Buddy Holly, The Big

## II. LEGAL ANALYSIS

### A. Subject Matter Jurisdiction

#### 1. The jurisdictional amount in controversy

The court must first look to the face of the complaint to determine the sum or value in controversy. This controls unless it appears or it is established that the amount is not claimed in good faith, that is, that it appears " 'to a legal certainty the claim is really for less than the jurisdictional amount.' " *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 (1961) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938)). As was said in the leading case of *St. Paul Mercury Indemnity Co. v. Red Cab Company*, 303 U.S. 283, 288–289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938):

'The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the

Bopper, and Richie Valens, and a commentary on how rock and roll changed in the years since their deaths. <http://www-ccs.ucsd.edu/svc/mu sic/american_pie.html>.

purpose of conferring jurisdiction, the suit will be dismissed.'

*Id.* Again in that case, it was said:

'His good faith in choosing the federal forum is open to challenge not only by resort to the face of his complaint, but by the facts disclosed at trial, and if from either source it is clear that his claim never could have amounted to the sum necessary to give jurisdiction there is no injustice in dismissing the suit.'

303 U.S. at 290, 58 S.Ct. at 591. In addition, it is well-established that the amount in controversy in actions for declaratory or injunctive relief is measured by the value of the object of the litigation or the right to be protected. *See, e.g., Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Hulsenbusch v. Davidson Rubber Co.,* 344 F.2d 730 (8th Cir.1965), *cert. denied,* 382 U.S. 977, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966); *Coca–Cola Co. v. Foods, Inc.,* 220 F.Supp. 101, 106 (D.S.D.1963); *Crowley Beverage Co. v. Miller Brewing Co.,* No. Civ.4–85–443, 1985 WL 474, *1 (D.Minn. Apr. 3, 1985) ; *see also Federated Mutual Implement & Hardware Ins. Co. v. Steinheider,* 268 F.2d 734 (8th Cir.1959) (stating in an equitable action for an injunction against irreparable injury, the amount in controversy is determined by the value of the property right sought to be protected against the alleged interference); *Siegerist v. Blaw–Knox Co.,* 414 F.2d 375, 381 (8th Cir.1969) (citing same).

■ In this case, the Richardson Estate claims that the matter in controversy does not exceed the jurisdictional amount of $75,000.00. The court does not agree. In support of its claim that the jurisdictional amount is satisfied, the president and CEO of Wells submitted an affidavit in which he stated that "Wells began to use the commerce name 'Big Bopper' to describe an ice cream confection in 1996," and that "this trademark to Wells alone exceeds $75,000.00." Affidavit of Fred Wells p. 1–2. Additionally, Fred Wells stated that "if Wells is required to stop using the trademark, the cost to develop and promote a new trademark would exceed $75,000.00." Therefore, based on Fred Wells's affidavit, and the defendants lack of proof otherwise, the court concludes that Wells, in good faith, satisfies the requisite jurisdictional sum.

### 2. *Federal question jurisdiction*

In the alternative, and by virtue of the amended complaint, Wells asserts that federal question jurisdiction exists by reason of the Federal Lanham Act, Title 15 § 1061 *et seq.* Jurisdiction premised upon a federal question is set forth in § 28 U.S.C. 1331, which provides:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

*See* § 28 U.S.C. 1331 (1994). *See also* § 28 U.S.C. 1338(a) ("district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks"). Furthermore, the Lanham Act is codified at 15 U.S.C. §§ 1051–72, 1091–96, 1111–21, and 1123–27 (1976). Significantly, 15 U.S.C. § 1121 provides the following:

The district and territorial courts of the United States shall have original jurisdiction and the courts of appeal of the United States shall have appellate jurisdiction, of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.

15 U.S.C. § 1121. Based on the foregoing, the court concludes that it has jurisdiction over Wells's Lanham Act claim.

### B. *Personal Jurisdiction*

■ For purposes of the Richardson Estate's motion to dismiss for lack of personal jurisdiction, the court takes all facts alleged in the complaint as true. *See Westcott v. Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990). Further, the court must construe the allegations in the complaint

and reasonable inferences arising from the complaint favorably to plaintiff Wells. *See Morton v. Becker,* 793 F.2d 185, 187 (8th Cir.1986). Although the ultimate burden of proof on the issue of jurisdiction falls upon Wells, a nonmoving party need only make a *prima facie* showing of jurisdiction to defeat a motion to dismiss. *See Stevens v. Redwing,* 146 F.3d 538, 543 (8th Cir. 1998); *Digi–Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.,* 89 F.3d 519, 522 (8th Cir.1996); *Wessels, Arnold & Henderson v. National Medical Waste, Inc.,* 65 F.3d 1427, 1431 (8th Cir.1995); *Dakota Indus., Inc. v. Ever Best Ltd.,* 28 F.3d 910, 914 (8th Cir.1994); *Barone v. Rich Bros. Interstate Display Fireworks Co.,* 25 F.3d 610, 612 (8th Cir.), *cert. denied sub nom. Hosoya Fireworks Co., Ltd. v. Barone,* 513 U.S. 948, 115 S.Ct. 359, 130 L.Ed.2d 313 (1994); *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 818 (8th Cir.1994); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir.1991); *cf. Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 566 (2d Cir.) ("Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction."), *cert. denied,* 519 U.S. 1006, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996). Jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing. *See Dakota Indus., Inc.,* 946 F.2d at 1387; FED.R.CIV.P. 12(b)(2). If the court does not hold a hearing and instead relies on pleadings and affidavits, the court must view the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party. *See id.; General Elec. Capital Corp. v. Grossman,* 991 F.2d 1376, 1387 (8th Cir.1993) (citing *Dakota Indus.*); *Med–Tec, Inc. v. Kostich,* 980 F.Supp. 1315, 1326 (N.D.Iowa

1997); *Woodke v. Dahm,* 873 F.Supp. 179, 192 (N.D.Iowa 1995).

The determination of whether or not a federal court has personal jurisdiction over a nonresident defendant involves a two-step analysis. *Genetic Implant Sys., Inc. v. Core–Vent Corp.,* 123 F.3d 1455, 1457–58 (Fed.Cir.1997); *Northrup King Co. v. Compania Productera Semillas Algodoneras Selectas, S.A.,* 51 F.3d 1383, 1387 (8th Cir.1995); *Gould v. P.T. Krakatau Steel,* 957 F.2d 573, 575 (8th Cir.), *cert. denied,* 506 U.S. 908, 113 S.Ct. 304, 121 L.Ed.2d 227 (1992); *Wines v. Lake Havasu Boat Mfg., Inc.,* 846 F.2d 40, 42 (8th Cir.1988). First, the court must decide whether the facts satisfy the forum state's long-arm statute. *Northrup King Co.,* 51 F.3d at 1387; *Wines,* 846 F.2d at 42. If the statute has been satisfied, then the court must address whether the facts show that the nonresident has minimum contacts with the forum state such that the court's exercise of jurisdiction would be fair and in accordance with the due process clause of the Fourteenth Amendment. *Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.,* 111 F.3d 1386, 1390 (8th Cir. 1997); *Moog World. Trade Corp. v. Bancomer, S.A.,* 90 F.3d 1382, 1384 (8th Cir. 1996); *Genetic Implant Sys., Inc.,* 123 F.3d 1455, 1457–58; *Northrup King Co.,* 51 F.3d at 1387; *Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.,* 950 F.2d 526, 528 (8th Cir.1991); *Wines,* 846 F.2d at 42.

### 1. Long-arm authority

In this case, the long-arm authority for defendant's service was Iowa Rule of Civil Procedure 56.2, which gives Iowa courts jurisdiction to the fullest constitutional extent.[3] *See Larsen v. Scholl,* 296 N.W.2d 785, 788 (Iowa 1980); *Aquadrill,*

---

**3.** Rule 56.2 provides, in pertinent part, that [e]very corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such

corporation, individual, personal representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States.

IOWA R.CIV.P. 56.2.

*Inc. v. Envtl. Compliance Consulting Serv.'s, Inc.,* 558 N.W.2d 391, 392 (Iowa 1997) (citing *Larsen*). Because the rule has been interpreted to confer jurisdiction to the fullest extent permitted by the due process clause, the personal jurisdiction inquiry here collapses into the single question of whether exercise of personal jurisdiction comports with due process. *See Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 818 (8th Cir.1994).

### 2. *Minimum Contacts*

Under the due process clause, the constitutional touchstone is whether defendant Richardson Estate has established sufficient minimum contacts with Iowa such that the exercise of jurisdiction here does not offend traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Northwest Airlines, Inc.,* 111 F.3d at 1390. In determining minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). In *Dakota Indus.,* the Eighth Circuit Court of Appeals summarized these due process requirements:

> In a series of cases following *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court has elucidated the "minimum contacts" standard that must be satisfied before a nonresident can be subjected to the jurisdiction of a state's courts. Due process requires that out-of-state defendants have " 'fair warning' " that they could be "haled into" court in a foreign jurisdiction. This requirement "is satisfied if the defendant had 'purposefully directed' his activities at residents of the forum ... and the litigation results from alleged injuries that 'arise out of or relate to' those activities."
>
> The contacts with the forum state must be more than " 'random,' " " 'fortui-

tous,' " or " 'attenuated.' " The due process clause forecloses personal jurisdiction unless the actions of the "defendant himself ... create[d] a 'substantial connection' with the forum State." Once the court has found that the defendant purposefully established the requisite minimum contacts with the forum state, the court still must determine whether assertion of jurisdiction comports with " 'fair play and substantial justice.' "

*Dakota Indus.,* 946 F.2d at 1389 (citations omitted); *see also Jarvis and Sons, Inc. v. Freeport Shipbuilding and Marine Repair, Inc.,* 966 F.2d 1247, 1249–50 (8th Cir.1992) (citing same standards); *Gould,* 957 F.2d at 575–76 (citing same standards).

In assessing the defendant's "reasonable anticipation" of being haled into court, there must be "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Bell Paper,* 22 F.3d at 818; *Northrup King Co.,* 51 F.3d at 1386–87; *Burger King,* 471 U.S. at 474–75, 105 S.Ct. 2174 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

#### a. *Specific v. general jurisdiction*

There are two broad types of personal jurisdiction: specific jurisdiction and general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984); *Bell Paper,* 22 F.3d at 819. Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872. Specific jurisdiction may not be exercised where none of the actions complained of occurred within or had any connection to the forum state. *Sondergard v. Miles, Inc.,* 985 F.2d 1389, 1392 (8th Cir.1993). The non-resident's contacts with the forum may be based on contacts by its representative, in light of

the Supreme Court's conclusion that "when commercial activities are carried on in behalf of an out-of-state party those activities may sometimes be ascribed to the party, at least where [it] is a primary participant in the enterprise and has acted purposefully in directing those activities." *Burger King Corp.*, 471 U.S. at 480 n. 22, 105 S.Ct. at 2186 n. 22.

■ In contrast, general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose. *Id.* at 415, 104 S.Ct. at 1872. For general jurisdiction to exist, the non-resident defendant must be engaged in "continuous and systematic contacts" within the forum. *Helicopteros,* 466 U.S. at 416, 104 S.Ct. at 1872–73. "In this situation the forum state has no direct interest in the specific cause of action asserted. Accordingly, contacts of a more extensive quality and nature are required." *Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1362 (5th Cir.1990).

### b. The five factor test

■ The test for evaluating the propriety of personal jurisdiction under the due process clause requires the court to consider the following five factors: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Northrup King Co.,* 51 F.3d at 1388; *Bell Paper,* 22 F.3d at 818; *Gould,* 957 F.2d at 576 (citing *Aaron Ferer & Sons Co. v. Diversified Metals Corp.,* 564 F.2d 1211, 1215 (8th Cir.1977)); *Dakota Indus.,* 946 F.2d at 1390; *Land–O–Nod Co. v. Bassett Furniture Indus., Inc.,* 708 F.2d 1338 (8th Cir. 1983). Of these factors, the first three are the most important. *Northrup King Co.,* 51 F.3d at 1388 (first three factors are closely related, while "[t]he latter two issues are 'secondary factors' in the inquiry"); *Dakota Indus.,* 946 F.2d at 1390. In particular, the Eighth Circuit Court of Appeals has concluded that a defendant has insufficient contacts with the forum state where the defendant has no office or agent or representative or employees in the forum state, does not do business in the forum state, *Jarvis and Sons v. Freeport Shipbuilding,* 966 F.2d 1247, 1250 (8th Cir. 1992), has no bank accounts or property in the forum, does not advertise or solicit any business in the state, and does not design products for use in the state. *Gould,* 957 F.2d at 576. The record in this case shows that the Richardson Estate does have some of these traditional contacts with the State of Iowa.

In order to demonstrate that personal jurisdiction exists, Wells contends that the Richardson Estate has transacted business in the state of Iowa. To support this contention, Wells points to three separate licensing agreements that the Richardson Estate granted to the Easter Seal Society of Iowa, Inc. ("Easter Seals"). This agreement gave the Easter Seals permission to use the name "The Big Bopper" in connection with a weekend event held at the Col Ballroom in Davenport, Iowa. The event consisted of an auction and a dance with the Easter Seals using "The Big Bopper" name on posters, programs, and sign-age to promote the event. Wells claims that during this event, the Richardson Estate donated memorabilia belonging to "The Big Bopper" for the auction part of the 1993 event, and split the revenue proceeds with the Easter Seals. In so doing, Wells claims that the Richardson Estate licensed the right to use the same property interest at issue in the present action to an Iowa resident for three consecutive years. Furthermore, Wells points to the cease and desist letter sent on behalf of the Richardson Estate to Wells' Dairy, Inc. in Iowa.

In addition, Wells contends that the Richardson Estate directly solicited business within the State of Iowa through personal visits. Wells maintains that on at least four occasions, Jay Perry visited the State of Iowa on behalf of the Richardson Estate to actively promote the music,

memory, and good name of his father "The Big Bopper." Three of these visits occurred at the Surf Ballroom in Clear Lake, Iowa, where "The Winter Dance Party" is held. This event commemorates and celebrates "The Big Bopper," and in the Summer of 1989 a memorial was dedicated to "The Big Bopper." Wells claims that during the party in 1989, Jay Perry and his representatives sold compact discs of "The Big Bopper's" music, pictures of himself with the caption "Big Bopper, Jr.," and buttons that showed the likeness of J.P. Richardson, Jr. In addition, Wells points out that in the December 23, 1999, edition of *The Des Moines Register Datebook,* there is an advertisement for the Winter Dance Party that lists dates that J.P. Richardson, Jr. (The Big Bopper's son) will perform, as well as the cost associated with attending such performances.

Wells also claims that the Richardson Estate solicited business in Iowa through the official Big Bopper website. Wells claims that the website enables the Richardson Estate to actively promote and sell a music video made by "The Big Bopper," compact discs of "The Big Bopper's" music performed and recorded by Jay Perry, membership to "The Big Bopper" Fan Club, and licenses for the name, image, likeness and voice of "The Big Bopper," and his son, Jay Perry.

Wells also claims that the Richardson Estate knowingly transacted business in Iowa through the "stream of commerce" and "effects" theory. Specifically, Wells points out that the Richardson Estate has licensed its rights in the music of "The Big Bopper" to Broadcast Music, Inc. ("BMI"). In turn, BMI has paid the Richardson Estate a royalty fee based on its sales for the right to sub-license the musical rights to various television and radio broadcast companies, which Wells claims have reached the residents of the state of Iowa. Wells emphasizes that both the Surf Ballroom and the Col Ballroom have paid a license fee to BMI for the right to play "The Big Bopper's" music at their particular events, and, therefore, the "The Big Bopper" property interest has been actively promoted in the state of Iowa.

In contrast, the Richardson Estate claims that personal jurisdiction does not exist, and states that it neither entered into a license agreement with the Easter Seals, nor received any consideration from the Easter Seals. The Richardson Estate maintains that it merely allowed the Easter Seals to use "The Big Bopper" name for the event. In so doing, it claims that it did not transact business within the state of Iowa. The Richardson Estate also argues that sending one cease and desist letter fails to show that it transacted business within Iowa, and is therefore not sufficient to establish personal jurisdiction.

The Richardson Estate likewise claims that it did not directly solicit business within Iowa. Specifically, the estate claims that plaintiff Wells's reference to Jay Perry's involvement with the Winter Dance Party is greatly embellished, when in fact his involvement was extremely limited. The Richardson Estate claims that its contacts with Iowa are sporadic and primarily indirect. Also, the Richardson Estate claims that the website is likewise not sufficient to establish jurisdiction in Iowa, because the level of activity involved with the website is minimal, and it claims that indirect contacts with Iowa through BMI should not be the basis of jurisdiction.

 The court must look at facts in the light most favorable to Wells as the non-moving party and resolve all factual conflicts in favor of Wells. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir.1991). Although courts have held that visits to the forum are insufficient to support personal jurisdiction if they are too few in number and too slight in quantity, *see Sybaritic, Inc. v. Interport Int'l, Inc.,* 957 F.2d 522, 524 (8th Cir.1992) (defendant's two day trip to forum to examine plaintiff's facilities and subsequent telephone and mail communications insufficient contact); *Morris v. Barkbuster, Inc.,* 923 F.2d 1277, 1279 (8th Cir.1991) (defendant's employees' three

trips to forum insufficient contact), the court concludes that there has been a consistent series of business contacts and visits by the Richardson Estate, through Jay Perry, in the State of Iowa for the purpose of transacting and soliciting business to sustain personal jurisdiction as to the Richardson Estate. The contacts of the Texas based Richardson Estate with this forum have been more than "random," "fortuitous," or "attenuated." For example, the Richardson Estate has transacted business for a period of several years in the State of Iowa as is evidenced by the licensing agreement with the Easter Seals of Iowa. In so doing, and taking the facts in the light most favorable to Wells's *prima facie* showing of jurisdiction, the Richardson Estate availed itself of the laws of Iowa by entering into a licensing agreement executed in this state. Also, while the court recognizes that the sending of a cease and desist letter does not by itself establish jurisdiction, *see Genetic Implant Sys., Inc. v. Core–Vent Corp.*, 123 F.3d 1455 (Fed.Cir.1997) (sending infringement letters, without more activity in a forum state, is not sufficient to satisfy the requirements of due process), the court opines that the Richardson Estate engaged in other activities within Iowa sufficient to warrant the exercise of personal jurisdiction.

For instance, not only has the Richardson Estate transacted business in the State of Iowa, but the Richardson Estate solicited business in Iowa. The Richardson Estate maintains a website, which is used to promote the name of "The Big Bopper," and to sell products. The Richardson Estate also participates in entertainment events with the similar purpose of promoting the name of "The Big Bopper," and selling products of "The Big Bopper." The sale of these products involves the trademark at issue in the present case, and, accordingly, such acts are related to the subject matter of Wells's Lanham Act claim. *See Land–O–Nod Co. v. Bassett Furniture Industries*, 708 F.2d 1338, 1341 (8th Cir.1983). Moreover, advertisements with the name, "The Big Bopper," ap-

peared, and continue to appear, in Iowa's newspapers to promote entertainment events. All these contacts with the State of Iowa prove that the Richardson Estate "purposefully availed" itself of transacting and soliciting business in Iowa and that the heirs of the Estate could have reasonably expected to be sued here. Although it is perhaps a close question, the court concludes that Wells has made a *prima facie* showing of jurisdiction to defeat the Richardson Estate's motion to dismiss for lack of personal jurisdiction. The court appreciates that many of the contacts listed above do not individually establish personal jurisdiction, however, the combination of these contacts do establish personal jurisdiction. Therefore, for the reasons stated above, the court finds that Wells has made out a *prima facie* case for the exercise of personal jurisdiction over the Richardson Estate, which comports with "fair play and substantial justice."

### C. Venue

#### 1. Improper venue

The court's conclusion that Wells has made a *prima facie* showing of personal jurisdiction and subject matter jurisdiction over the Texas defendant does not dispose of the present motions to dismiss, however. The Richardson Estate has also moved to dismiss the action for improper venue for many of the same reasons that it claimed want of personal jurisdiction. The court acknowledges that in most situations if personal jurisdiction does not exist, then venue also does not exist. Notwithstanding, personal jurisdiction and venue are separate questions. *Woodke v. Dahm*, 873 F.Supp. 179, 197 (N.D.Iowa 1995). In this case, the governing venue provision is codified in 28 U.S.C. § 1391(b), which provides:

> **(b)** A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the

same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b); *See Emerson Electric Co. v. Black and Decker Manufacturing Co.*, 606 F.2d 234, 238 (8th Cir.1979) (stating that a declaratory judgment action for patent invalidity and non-infringement is governed by 28 U.S.C. § 1391(b)); *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed.Cir.1990) (same); *United States Aluminum Corp. v. Kawneer Co., Inc.*, 694 F.2d 193, 195–96 (9th Cir.1982) (same); *see also* Moore's Federal Practice § 110.39[3][b] (3d ed. 1997) ("A declaratory judgment action alleging that a patent is invalid and not infringed is governed by the general venue statute, not by § 1400(b), even thought it is the mirror-image of a patent infringement suit and involves the same questions of law and fact.").

The Richardson Estate argues that venue in the Northern District of Iowa is improper because the heirs of the estate all reside in Texas. Thus, the Richardson Estate maintains that venue is proper in the state of Texas. In contrast, Wells argues that because the events giving rise to its declaratory judgment action arose in the Northern District of Iowa, venue is proper in Iowa pursuant to 28 U.S.C. § 1391(a) & (b). Wells also argues that its declaratory judgment action was the direct result of the Richardson Estate's repeated and unfounded accusations of misappropriation, which Wells claims were made in Iowa. Additionally, Wells

argues that venue is proper in Iowa because the products that bear the alleged misappropriated trademark are manufactured in LeMars, Iowa, and the decision to adopt the trademark was made in Iowa. Although the Richardson Estate correctly argues that venue is proper where all the defendants reside, the court stresses that there can be more than one proper venue. *See Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir.1995) (stating that the venue statute does not posit a single appropriate district for venue). Therefore, while Texas is a proper venue, the court concludes that Iowa is also a proper venue based on 28 U.S.C. § 1391(b)(2).[4]

In *Setco Enters., Corp. v. Robbins,* 19 F.3d 1278 (8th Cir.1994), the Eighth Circuit Court of Appeals stated that under the amended venue statute,[5] "we no longer ask which district is the best among two or more potential forums." *Setco,* 19 F.3d at 1281; (citing *Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 867 (2d Cir.1992)); *cf. Missouri Housing Development Com'n. v. Brice,* 919 F.2d 1306 (8th Cir.1990) (discussing venue under 28 U.S.C. 1391(b)(2), prior to the amendment in 1990, and *Leroy v. Great Western United Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), wherein the Supreme Court employed the weight of the contacts test instead of the substantial contacts rule). Rather, the Eighth Circuit Court of Appeals stated "we ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." *Id.*

In this case, not only did Wells receive the cease and desist letter from the Richardson Estate at its headquarters in Iowa, which precipitated this suit, *see Database America, Inc. v. Bellsouth Advertising &*

4. Venue is proper in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. 28 U.S.C. § 1391(b)(2).

5. In 1990, Section 1391(b)(2) was amended to provide that venue was proper in "a judicial district in which a substantial part of the events or missions giving rise to the claim occurred." *See* Judicial Improvements Act of 1990, Pub.L. 101–650, Title III, § 311, 104 Stat. 5114 (codified at 28 U.S.C. § 1391(b)(2)).

*Publishing*, 825 F.Supp. 1216, 1226 (D.N.J. 1993) (to find that the mere sending of the cease-and-desist letter into this judicial district sufficiently established venue would be inconsistent with the purposes of the statutory venue requirement); *KVH Indus., Inc. v. Moore*, 789 F.Supp. 69, 73 (D.R.I.1992) (rejecting assertion that cease-and-desist letter gives rise to venue in action for declaratory judgment of non-infringement and invalidity); *Lex Computer & Management Corp. v. Eslinger & Pelton, P.C.*, 676 F.Supp. 399, 406 n. 7 (D.N.H.1987) (questioning validity of finding venue in forum into which cease-and-desist letters were sent), but the Richardson Estate engaged in substantial activities in Iowa that were directly related to the trademark at issue. The court previously found that the Richardson Estate engaged in substantial activities within the state of Iowa in its personal jurisdiction analysis, and therefore, a reprisal of that analysis here is unnecessary. *See* H.R. No. 101–734, 101st Cong., 2d Sess. 23 (1990), reprinted in 1990 U.S.C.C.A.N. at 6869 (1990 Amendment was designed to bring venue requirements in line with personal jurisdiction requirement). Additionally, the "Big Bopper" ice cream sandwich, the alleged infringing product, is manufactured in the Northern District of Iowa. *See Dakotah, Inc. v. Tomelleri*, 21 F.Supp.2d 1066, 1073 (D.S.D.1998) (finding that venue was proper in the District of South Dakota because the alleged infringing articles were designed and manufactured in the District of South Dakota). The court reiterates that it is not required to determine if Iowa is the "best" venue; rather, the court is only required to determine whether venue in the Northern District of Iowa is proper. The court concludes that venue is proper in the Northern District of Iowa, and, therefore, the Richardson Estate's motion to dismiss for improper venue is denied.

## 2. *Forum non conveniens*

In the alternative, the Richardson Estate argues that the Northern District of Iowa is an inconvenient forum, and,

therefore, the court should dismiss the action pursuant to the *forum non conveniens* doctrine. The Richardson Estate posits the following in support of their argument: (1) all the defendant heirs reside in the state of Texas; (2) Wells has a registered agent in Texas; (3) Wells sells its ice cream products in Texas; and (4) a Texas state court case with the exact same parties is pending. The Richardson Estate also argues that they will incur great expenses litigating in Iowa and, because they did not purposefully avail themselves to jurisdiction in Iowa, they should not be required to incur such an expense. Wells counters, contending that the Richardson Estate has the burden of proving all elements necessary for the court to dismiss a claim based on *forum non conveniens*, and because the Richardson Estate did not submit any evidence or affidavits in support of their "conclusory points" for dismissal, they have failed to meet the necessary burden. Wells sets forth four reasons in an effort to demonstrate to the court that dismissal pursuant to *forum non conveniens* is not warranted under the circumstances in this case. Indeed, Wells contends that the *forum non conveniens* analysis favors Iowa.

Under the doctrine of *forum non conveniens*, " 'when an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience, or when the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems, 'the court may, in the exercise of its sound discretion,' dismiss the case, even if jurisdiction and proper venue are established.' " *American Dredging Co. v. Miller*, 510 U.S. 443, 447–48, 114 S.Ct. 981, 127 L.Ed.2d 285, (1994), (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). It is a discretionary doctrine which vests in the District Courts the power to abstain from the exercise of jurisdiction "even where authorized by statute if 'the litiga-

tion can more appropriately be conducted in a foreign tribunal.' " *De Melo v. Lederle Labs.,* 801 F.2d 1058, 1060 (8th Cir.1986); *See also Mizokami Bros. of Arizona v. Mobay Chemical Corp.,* 660 F.2d 712, 717 (8th Cir.1981) (quoting *Dahl v. United Technologies Corp.,* 632 F.2d 1027, 1029 (3d Cir.1980)) ("The principle of *forum non conveniens* permits a court to decline jurisdiction even though venue and jurisdiction are proper, on the theory that for the convenience of the litigants and witnesses, the action should be tried in another forum."); *American Dredging Co. v. Miller,* 510 U.S. 443, 449, n. 2, 114 S.Ct. 981, 986, n. 2, 127 L.Ed.2d 285 (1994) (explaining that to the extent we [the Court] have continued to recognize that federal courts have the power to dismiss damages actions under the common-law *forum non conveniens* doctrine, we [the Court] have done so only in "cases where the alternative forum is abroad.").

The principles that govern a motion to dismiss on *forum non conveniens* grounds are well settled. The Court must first determine whether there is an adequate alternative forum available in which the dispute can be resolved. If there is such a forum, the Court must balance a number of factors in order to determine whether they outweigh the deference ordinarily attended to the plaintiff's choice of forum. *See Mizokami Bros. of Arizona,* 660 F.2d at 717–18. In the seminal decision of *Gulf Oil v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Court enumerated a nonexhaustive list of factors which must be considered in the *forum non conveniens* equation. The Court categorized these considerations into "private interest," and "public interest" factors. The private interest factors consist of the following:

1) relative ease of access to sources of proof;

2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses;

3) possibility of view of the premises, if view would be appropriate to the action; and

4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 70 L.Ed.2d 419, quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055. The public interest factors consist of the following:

1) administrative difficulties flowing from court congestion;

2) the forum's interest in having localized controversies decided at home;

3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;

4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and

5) the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055).

Under this analysis, the defendant bears the ultimate burden of persuasion in satisfying the court that a *forum non conveniens* dismissal is appropriate. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,* 51 F.3d 1383, 1389 (8th Cir.1995). In addition, the Eighth Circuit Court of Appeals reiterated that the "central principle of the Gilbert doctrine" is that, in weighing these factors, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Reid–Walen v. Hansen,* 933 F.2d 1390, 1394 (8th Cir.1991) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055).

### Application of the forum non conveniens factors

As articulated above, the doctrine of *forum non conveniens* presupposes that an

adequate alternative forum is available to hear the case. *Reid–Walen v. Hansen*, 933 F.2d at 1393 n. 2. This is a two part-part inquiry: availability and adequacy. *Id.* (citing *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1165 (5th Cir.1987)) (en banc), partially vacated on other grounds, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989). Generally, an alternate forum will be considered adequate when the defendant is "amenable to process" there. *See Gulf Oil*, 330 U.S. at 506–07, 67 S.Ct. at 842; *see also R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 167 (2d Cir.1991) (citing *Piper Aircraft v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). Here, Wells has already appeared before the Texas state court without any challenge to jurisdiction. That action is still pending and, therefore, the Texas state court is an adequate alternative forum. *See also* 28 U.S.C. § 1338(a) (provides federal and state courts with concurrent jurisdiction in matters of trademark). The court will now turn to the private and public factors and determine whether they favor dismissal.

### a. Private Interest Factors

The private interest factors do not decidedly weigh in favor of either alternative as the more convenient venue for this litigation. Wells is a corporation with its principal place of business in LeMars, Iowa, and all the products bearing the trademark "Big Bopper" are manufactured in LeMars, Iowa. The Richardson Estate is comprised of the heirs of The Big Bopper, all of whom reside in Texas. As to Wells, it claims that litigating in Iowa will be far more convenient than proceeding with this litigation in Texas. Wells contends that its key witnesses to this action reside in Iowa. For example, Wells states that all individuals who participated in naming Wells's ice cream product and who can explain that the product was named for the sole reason of its large-size in comparison to others reside in Iowa. Wells further contends that additional witnesses, who will attest to use of the name "Big Bopper," unrelated to the musician, are scattered throughout the United States. In contrast, the Richardson Estate asserts that Wells has a registered agent in Texas, and it sells its alleged infringing ice cream product in Texas. To further support their motion to dismiss this case based on *forum non conveniens*, the Richardson Estate stresses that all the heirs reside in the state of Texas, and the great expense they will incur if forced to litigate in Iowa.

Upon review, the court concludes that there is nothing inherent about the Northern District of Iowa's location regarding the parties' themselves that suggests that their convenience favors dismissal. The court has not been presented with any compelling evidence that litigating in Iowa will be more inconvenient to the Richardson Estate as a party than litigating in Texas will be to Wells. The court reiterates that under the doctrine of *forum non conveniens*, the burden of proof for dismissal pursuant to *forum non conveniens* rests with the defendant. The Richardson Estate has failed to provide the court with any evidence indicating the names and location of the potential witnesses they anticipate on calling; the quality and materiality of the witnesses' expected testimony; whether their witnesses are unwilling to appear in one forum or the other; whether deposition testimony would be unsatisfactory; whether the use of compulsory process would be necessary or possible. In the same vein, the Richardson Estate's assertion that they will incur great expense if forced to litigate in Iowa is unsubstantiated. The court recognizes that the parties' relative financial ability to undertake a trial in any particular forum is a relevant consideration. *See Berman v. Informix Corp.*, 30 F.Supp.2d 653, 659 (S.D.N.Y.1998) (citing *Hernandez v. Graebel Van Lines*, 761 F.Supp. 983, 989 (E.D.N.Y.1991)) ("where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered."); *see also Pall Corp. v. PTI Technologies, Inc.*, 992 F.Supp. 196, 200 (E.D.N.Y.1998) ("The court may also con-

sider ... whether a disparity between the parties exists with respect to their relative means, such as in the case of an individual plaintiff suing a large corporation"). However, no showing has been made that litigating this action in Iowa would impose an undue hardship on the Richardson Estate. *See Hernandez,* 761 F.Supp. at 989 (according factor little or no significance absent showing of disparity of means between corporate plaintiff and individual defendant). In fact, neither party has offered the court any estimates as to how much more it would cost to try the case in the other party's forum of choice, nor has either party submitted any financial affidavits corroborating their current financial condition. While the Richardson Estate would have higher travel costs for its witnesses if it is required to litigate in Iowa, Wells would incur increased travel costs if forced to litigate in Texas. Thus, without evidence substantiating and corroborating the Richardson Estate's claims outlined above, the court is unable to attribute any significant amount of weight to them. Therefore, the court concludes that the Richardson Estate has not set forth any private factors that weigh in favor of dismissal.

### b. The public interest factors

The Richardson Estate has also failed to carry its burden of proof and establish that the public interest factors weigh heavily in favor of dismissal. The product at issue is manufactured in Iowa, and the trademark at issue was registered by Wells, which is an Iowa corporation. Accordingly, the people of Iowa have a genuine and legitimate interest in the resolution of the issue here. Moreover, this case would not impose a burden on the court, and it would not interfere with the rights of the Texas based litigants to try the case here. Based on the foregoing, the court has exercised its obligation to address and balance the relevant principles and factors of the doctrine of *forum non conveniens* and has determined that those factors weigh in favor of trying this case here. As a result, Wells's chosen forum, Iowa, will not be disturbed. *See Reid–Walen v. Hansen,* 933 F.2d 1390, 1394 (8th Cir.1991) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). Accordingly, because the court concludes that Iowa will best serve the convenience of the parties and the ends of justice, the Richardson Estate's motion to dismiss pursuant to *forum non conveniens* is denied. *Reid–Walen v. Hansen,* 933 F.2d at 1401 (citing *Koster v. Lumbermens Mut. Casualty Co.,* 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947)) (The "ultimate inquiry" in a *forum non conveniens* analysis is where the place of trial will "best serve the convenience of the parties and the ends of justice.").

### D. Brillhart Abstention

█ The Richardson Estate also argues that an exception to the "first-filed" rule warrants dismissal of this action. The Richardson Estate claims that Wells's declaratory judgment action was aimed solely at robbing them of their choice of forum, and it should therefore be given no effect because they are the "true plaintiffs." The Richardson Estate also points out that their Texas state court action is still pending. Wells responded to the Richardson Estate's argument, contending that the circumstances in this case do not warrant departure from the "first-filed" rule. The court, however, emphasizes that application of the "first-filed" rule is generally only applied between concurrent cases in federal court. *See United States Fidelity and Guaranty Co. v. Petroleo Brasileiro S.A.–Petrobras, et al.,* 2000 WL 48830, *2 (S.D.N.Y. Jan. 21, 2000) (explaining that the first filed rule is a rule of deference between federal courts, whereas whether a federal court should defer to a concurrent action pending in state court raises an issue of abstention); *Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.,* 930 F.Supp. 1317, 1327 n. 9 (D.Minn.1996) (stating that the first filed rule is generally

only applied to concurrent cases in federal court). Thus, hypothetically, if the action in Texas was a federal court action, the "first-filed" rule would undoubtedly apply. Here, however, the concurrent actions are not between federal courts; rather, the present suit is a federal declaratory judgment action, whereas the Texas suit is a state court action. Consequently, the analysis regarding comity between two federal courts is tangential to the analysis required here.

The United States Supreme Court has determined that a district court's decision to stay or dismiss a declaratory judgment action is governed by the discretionary standard set forth in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). The *Brillhart* abstention doctrine operates to allow district courts to avoid indulging in "gratuitous interference" where there is pending in state court another suit involving the same parties and "presenting opportunity for ventilation of the same state law issues...." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282–83, 115 S.Ct. 2137, 2141–42, 132 L.Ed.2d 214 (1995). Further,

> Although *Brillhart* did not set out an exclusive list of factors governing the district court's exercise of this discretion, it did provide some useful guidance in that regard. The Court indicated, for example, that in deciding whether to enter a stay, a district court should examine "the scope of the pending state court proceeding and the nature of defenses open there." *Id.* This inquiry, in turn, entails consideration of "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Id.* Other cases, the Court noted, might shed light on additional factors governing a district court's decision to stay or to dismiss a declaratory judgment action at the outset.

*Id.* at 282–83, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214. In the final analysis, a district court must "ascertain whether the

questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can be better settled in the proceeding pending in state court...." *Brillhart,* 316 U.S. at 495, 62 S.Ct. 1173, 86 L.Ed. 1620.

Although federal courts have broad discretion in declaratory judgment actions, controlling authority suggests that abstention is disfavored in cases where the state court action is not truly parallel or where issues of federal law control. The Supreme Court in *Wilton* emphatically stated that it did not attempt "to delineate the outer boundaries of that discretion in other cases, for example, cases raising issues of federal law or cases in which there are no parallel state proceedings." *Wilton,* 515 U.S. at 290, 115 S.Ct. 2137, 132 L.Ed.2d 214.

The Eighth Circuit Court of Appeals has held that the decision to abstain does not avail itself of a strict rule of law, but is based on the circumstances, controlled by the trial court's discretion. *Aetna Cas. and Surety Co. v. Jefferson Trust and Savings Bank of Peoria,* 993 F.2d 1364 (8th Cir.1993). The Eighth Circuit Court of Appeals has further held that where the crux of the litigation lies in the application of a state statute, the district court was within its "unique and substantial discretion" to abstain and allow the state court's to pronounce on constitutional challenges to the state statute. *Horne v. Firemen's Retirement System of St. Louis,* 69 F.3d 233, 236 (8th Cir.1995).

In *Int'l Assoc. of Entrepreneurs of America v. Angoff,* 58 F.3d 1266 (8th Cir. 1995), the Eighth Circuit Court of Appeals cautioned that a sequence of events wherein a party sues in state court and the defending party subsequently asks for declaratory judgment on the same matters "alerts us to be on guard." *Id.* at 1270. "The Declaratory Judgment Act is not to be used either for tactical advantage by litigants or to open a new portal of entry to federal courts for suits that are essen-

tially defensive or reactive to state actions." *Id.* "More specifically, the Declaratory Judgment Act is not to be used to bring to the federal courts an affirmative defense which can be asserted in a pending state action." *Id.* In *Angoff,* abstention was favored after the declaratory judgment plaintiff had tried and failed to remove the state case, and was held to be attempting to improperly gain access to federal court. This must be balanced against the teaching of *BASF Corp. v. Symington,* 50 F.3d 555, 557 (8th Cir. 1995),[6] where the Court of Appeals held that, for abstention analysis, a court should look carefully to ensure that a state-court plaintiff was not being wrongfully denied his choice of forum; however, there is "no blanket prohibition on raising affirmative defenses by declaratory action." *Id.* at 558. Nevertheless, "where a declaratory plaintiff raises chiefly an affirmative defense, and it appears that granting relief could effectively deny an allegedly injured party its otherwise legitimate choice of the forum and time for suit, no declaratory judgment should issue." *Id.* at 559. Additionally, the court held that the factors of who filed first, and which case has made more progress, are not dispositive. *Id.*

There is also persuasive authority in the Second Circuit that abstention is disfavored in those cases where federal law supplies the rule of decision or where there are no parallel state court actions. For example, in *Dittmer v. County of Suffolk,* 146 F.3d 113 (2d Cir.1998), the Second Circuit Court of Appeals acknowledged that where a plaintiff seeks a declaratory judgment, the district court has somewhat greater discretion to abstain. *Dittmer,* 146 F.3d at 118. The Second Circuit Court of Appeals reasoned that "[t]o avoid wasteful and duplicative litigation, district courts may often dismiss declaratory judgment actions 'where another suit is pending in a state court presenting the same issues, not governed by federal law, between the

same parties.'" *Id.* (quoting *Wilton,* 515 U.S. at 282, 115 S.Ct. 2137, 132 L.Ed.2d 214). The Second Circuit Court of Appeals held, however, that abstention would not be appropriate in *Dittmer* because none of the plaintiffs in the federal action were parties to the state action—i.e., there was no parallel state proceeding—and "because the present action involves issues of federal law only." *Id.; See also Wilton,* 515 U.S. at 290, 115 S.Ct. 2137, 132 L.Ed.2d 214 (explaining that abstention is more appropriate where state law issues predominate).

Similarly, in *Youell v. Exxon Corp.,* 74 F.3d 373 (2d Cir.1996), the Second Circuit Court of Appeals found *Wilton* fundamentally distinct from the case before it because *Wilton* involved state law only whereas *Youell* involved novel issues of federal admiralty law. *Youell,* 74 F.3d at 376. The Second Circuit Court of Appeals emphasized that the *Wilton* Court specifically declined to set forth the outer limits of a district court's discretion in cases, such as this, raising issues of federal law. *Id.* According to the Court, "[w]hile we loathe wasting judicial resources, it would be worse to cede federal review of an issue of federal law merely because [defendant] won the race to judgment in state court." *Id.* (quoting *Youell v. Exxon Corp.,* 48 F.3d 105, 114 (2d Cir.1995)). The question becomes simply in which pending action can the issues in controversy be better settled. *See McDonald's Corp. v. 2502 8th Ave. Corp.,* 920 F.Supp. 67, 69 (S.D.N.Y. 1996).

Here, Wells has not attempted to interfere with the state courts. Instead, it is seeking a declaration of its rights to use its federally registered trademark throughout the United States. This case presents no state law claim. Similarly, this case presents no claim of federal invalidity of a state statute. Thus, no question of state law has been presented in Wells's declaratory

---

**6.** The *BASF* court utilized the now-incorrect "extraordinary circumstances" test of the Colorado River abstention doctrine, *see Wilton,* 515 U.S. at 288, 115 S.Ct. 2137, 132 L.Ed.2d 214, but the other principles remain the same.

judgment action. It only calls for a declaration concerning the rights to the name "Big Bopper," which is purely a question arising under federal law.[7] Therefore, the court concludes that the presence of an issue of federal law militates against abstention.

Additionally, while not dispositive, the fact that Wells filed its declaratory judgment first is relevant. In *Prudential Ins. Co. v. Doe*, 140 F.3d 785, 788 (8th Cir. 1998), the Eighth Circuit Court of Appeals stated that it was significant that Prudential, the declaratory plaintiff in that action, was the first litigant to file suit. For this proposition, the Eighth Circuit Court of Appeals relied on the Fifth Circuit Court of Appeals decision in *Royal Ins. Co. of America v. Quinn–L Capital Corp.*, 3 F.3d 877, 886 (5th Cir.1993). In that case, after concluding that *Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491 (5th Cir. 1988) (en banc) represented a novel type of abstention, the *Quinn–L* court noted that "in some cases the date on which the state court suit was filed can make a difference in the application of the abstention doctrine." *Id.* at 886. The court concluded that a federal court need not abstain from proceeding with a declaratory judgment action "where the federal suit is filed substantially prior to any state suits, significant proceedings have taken place in the federal suit, and the federal suit has neither the purpose nor the effect of overturning a previous state court ruling." *Id.* However, if an action for declaratory judgment has been filed first, the court must determine whether such filing was "anticipatory" of the declaratory defendant's filing suit in state court. *See Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1007 (8th Cir.1993) (stating that declaratory judgment actions may on occasion merit 'a closer look' to ensure that the declaratory plaintiff is not motivated by forum-shopping concerns); *Pacific Employers Ins. Co. v. M/V Capt. W.D. Cargill*, 751 F.2d 801, 804 (5th Cir.), *cert. denied*, 474 U.S. 909, 106 S.Ct. 279, 88 L.Ed.2d 244 (1985) (citing same); *see also Allendale Mutual Ins. Co. v. Bull Data Systems*, 10 F.3d 425, 431 (7th Cir.1993) ("[A] suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed...."); *St. Paul Fire and Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir.1995) (stating that a district court may choose to avoid a declaratory judgment action because the plaintiff is using the action for procedural fencing); *State Farm Fire & Cas. Co. v. Taylor*, 118 F.R.D. 426, 430 (M.D.N.C.1988) (explaining that a district court may consider the inequity of permitting a declaratory judgment plaintiff to gain precedence in time and forum by filing an anticipatory action).

The Richardson Estate characterizes Wells's suit as one aimed at depriving the "natural plaintiffs" of their chosen forum while obtaining the benefits of litigating in its chosen forum. However, the court points out that both parties had every reason to believe that it might be necessary to resort to the courts for a resolution of the dispute. A reprisal of the events between the parties prior to the filing of this declaratory judgment action is useful in determining whether this action was brought purely in anticipation of the subsequent Texas state court action.[8]

The Richardson Estate had been making claims of infringement, misappropriation, and violation of a Texas state property law, since April 30, 1999, the date on which

---

7. The court appreciates that the complaint also alleges diversity of citizenship as a jurisdictional basis under 28 U.S.C. § 1332. However, because Wells did not plead a claim for relief under state law, only federal law is applicable in this action.

8. Although the same could be said about the plaintiffs in the state action. The court points out that by filing a state suit after a federal action has been filed, the state plaintiff can be viewed as attempting to use the state courts to interfere with the jurisdiction of the federal courts. In so doing, the mere filing of a state court action could be used as a sword, rather than a shield, to defeat federal jurisdiction.

Wells received the cease and desist letter from the Richardson Estate. On May 7, 1999, Wells responded to the cease and desist letter, seeking additional information concerning the Richardson Estate's commercial usage of the name "The Big Bopper," because its own investigation revealed that the Richardson Estate did not use that name in any commercial activity. Wells followed up its call in a facsimile sent to the Richardson Estate's counsel on May 28, 1999, seeking that same information and confirming that by June 1, 1999, it would advise counsel for the Richardson Estate of its position concerning the demands in the cease and desist letter. Thereafter, on May 19, 1999, counsel for the Richardson Estate responded by facsimile stating that it would not provide that information, because the request was not an act in good faith to settle the claim. Additionally, counsel for, the Richardson Estate stated that he was considering legal action unless Wells paid the Richardson Estate the $75,000.00 they demanded in the cease and desist letter. Based on these facts, the court is convinced that the Richardson Estate was not misled into thinking that Wells was not contemplating filing suit, particularly when the correspondence between the parties was extremely adversarial. Also, in such circumstances, the court does not believe that a party accused of patent infringement must wait indefinitely until the accuser decides to litigate the issue to clear itself of the accusation.

In this situation, the court does not find that this was a "race to the courthouse" situation in which only a "preemptive strike" or procedural maneuvering provided Wells with the advantageous forum. The Richardson Estate waited sixteen days after being served with Wells's declaratory suit before filing their own lawsuit in state court. Although the Richardson Estate had been threatening actions to enforce their rights, it does not appear to

the court that Wells had any reason to believe that only by swift action would it beat the Richardson Estate to the courthouse. Indeed, Wells did not file this declaratory judgment action until a month after it received the cease and desist letter. Thus, the court concludes that this suit was not an anticipatory suit brought for improper purposes.

Therefore, because there are no questions of state law that need to be resolved in this case and because this action was filed first, the court concludes that this is not a case where the issues would necessarily be better resolved in the pending state court proceeding. Accordingly, under *Brillhart*, the court will not abstain from exercising jurisdiction over this declaratory judgment action.

### E. Injunction

The court now turns to Wells's request to enjoin the Richardson Estate from proceeding with its duplicative action in Texas.[9] Wells argues that the Richardson Estate's duplicative action threatens to waste judicial resources and subjects the parties to conflicting judgments. Wells contends that the "first-filed" rule, if given effect by this court, militates in favor of enjoining the pending action in Texas. Wells supports its argument with cases explaining and applying the "first-filed" rule. Significantly, the cases that Wells relies on in support of its motion to enjoin the action in Texas involve two federal courts. Because this case involves two actions: one at the federal level and one at the state level, such cases lend little guidance and in fact are inapplicable here. Rather, any analysis of the power of a federal court to enjoin a state court proceeding must begin with the Anti–Injunction Act ("The Act") codified at 28 U.S.C. § 2283. The Act provides:

*C.L.R.R. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970).

**9.** That the complaint is directed against the parties to the state court proceeding, rather than against the state court, is irrelevant for determining § 2283's applicability. *Atlantic*

A court of the United States may not grant an injunction to stay state court proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283; *In re SDDS, Inc.*, 97 F.3d 1030, 1036 (8th Cir.1996). By barring such federal court intervention, the Act "prevent[s] needless friction between state and federal courts...." *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 286, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970).

The Supreme Court has "expressly rejected the view that the anti-injunction statute merely states a flexible doctrine of comity, and [has] made clear that the statute imposes an absolute ban upon the issuance of a federal injunction against a pending state court proceeding, in the absence of one of the recognized exceptions...." *Mitchum v. Foster*, 407 U.S. 225, 228–29, 92 S.Ct. 2151, 2155, 32 L.Ed.2d 705 (1972) (citing *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 286–87, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970)); *accord Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 630, 97 S.Ct. 2881, 2887, 53 L.Ed.2d 1009 (1977) (holding that unless one of the exceptions governs, federal courts are "absolute[ly] prohibit[ed]" from enjoining a state judicial proceeding); *Atlantic Coast Line R. Co.*, 398 U.S. at 286, 90 S.Ct. at 1743 (holding that the Anti–Injunction Act constitutes "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of [the] three specifically defined exceptions."); *Amalgamated Clothing Workers v. Richman Bros.*, 348 U.S. 511, 516, 75 S.Ct. 452, 455, 99 L.Ed. 600 (1955) ("[l]egislative policy is here expressed in a clear-cut prohibition qualified only by specifically defined exceptions...."); *In re SDDS, Inc.*, 97 F.3d 1030, 1037 (8th Cir.1996) ("The Supreme Court has 'expressly rejected the view that the anti-injunction statute merely states a flexible doctrine of comity, and [has] made clear that the statute imposes

an absolute ban upon the issuance of a federal injunction against a pending state court proceeding, in the absence of one of the recognized exceptions....' ") (quoting *Mitchum*, 407 U.S. at 228–29, 92 S.Ct. at 2155); *Kansas Public Employees Retirement Sys. v. Reimer & Koger Assocs., Inc.*, 77 F.3d 1063, 1068 (8th Cir.) ("The Anti–Injunction Act prohibits federal courts from enjoining proceedings in state courts unless the injunction falls within one of three exceptions."), *cert. denied*, 519 U.S. 948, 117 S.Ct. 359, 136 L.Ed.2d 250 (1996); *Employers Resource Management Co. v. Shannon*, 65 F.3d 1126, 1130 (4th Cir.1995) ("[I]t now is settled that the Act is 'an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of [those] three specifically defined exceptions.' ") (quoting *Atlantic Coast Line R. Co.*, 398 U.S. at 286, 90 S.Ct. at 1743), *cert. denied*, 516 U.S. 1094, 116 S.Ct. 816 (1996); *Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58, 60 (2d Cir.1990) ("The Supreme Court has construed the Act to forbid a federal court from enjoining a party from prosecuting a state court action unless one of the three exceptions stated in the statute obtains."); *United States Steel Corp. Plan for Employee Ins. Benefits v. Musisko*, 885 F.2d 1170, 1175 (3d Cir.1989) ("Unless one of the exceptions governs the order, federal courts are 'absolute[ly] prohibit[ed]' from enjoining a state judicial proceeding."), *cert. denied*, 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990); *Garcia v. Bauza–Salas*, 862 F.2d 905, 907 (1st Cir.1988) (holding that the Anti–Injunction Act creates "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of [the] three specifically defined exceptions.") (quoting *Atlantic Coast Line R. Co.*, 398 U.S. at 286, 90 S.Ct. at 1743); *Gunderson v. ADM Investor Services, Inc.*, 976 F.Supp. 818, 822 (N.D.Iowa 1997) (citing same).

The Act permits injunctions in three, specific circumstances, namely, where the injunction (1) is expressly authorized by

Congress; (2) is necessary in aid of the court's jurisdiction; or (3) is necessary to protect or effectuate the court's judgment. 28 U.S.C. § 2283; *see Chick Kam Choo,* 486 U.S. at 146, 108 S.Ct. at 1689. As the Court has recognized, the exceptions to the Anti–Injunction Act are narrow in scope and are "not [to] be enlarged by loose statutory construction." *Atlantic Coast Line R. Co.,* 398 U.S. at 287, 90 S.Ct. at 1743; *accord Chick Kam Choo,* 486 U.S. at 146, 108 S.Ct. at 1689; *In re SDDS, Inc.,* 97 F.3d at 1037; *J.R. Clearwater Inc. v. Ashland Chem. Co.,* 93 F.3d 176, 178 (5th Cir.1996); *National Basketball Ass'n v. Minnesota Professional Basketball, Ltd. Partnership,* 56 F.3d 866, 872 (8th Cir. 1995); *Royal Ins. Co. of Am. v. Quinn–L Capital Corp.,* 3 F.3d 877, 883 (5th Cir. 1993), *cert. denied,* 511 U.S. 1032, 114 S.Ct. 1541, 128 L.Ed.2d 193 (1994). Furthermore, the Court cautioned against enjoining parallel state proceeding in deference to principles of comity and federalism, stating that

> [a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state court to proceed in an orderly fashion to finally determine the controversy. The explicit wording of § 2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion.

*Atlantic Coast Line R. Co.,* 398 U.S. at 297, 90 S.Ct. at 1748; *accord Vendo Co.,* 433 U.S. at 630, 97 S.Ct. at 2887; *Reimer & Koger Assocs., Inc.,* 77 F.3d at 1068; *Blalock Eddy Ranch v. MCI Telecommunications Corp.,* 982 F.2d 371, 375 (9th Cir.1992); *Musisko,* 885 F.2d at 1176; *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir. 1987), *cert. denied,* 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988); *Bluefield Community Hosp., Inc. v. Anziulewicz,* 737 F.2d 405, 408 (4th Cir.1984); *Delta Air Lines, Inc. v. McCoy Restaurants, Inc.,* 708 F.2d 582, 585 (11th Cir.1983); *Roth v. Bank of the Commonwealth,* 583 F.2d 527, 534 (6th Cir.1978); *International Controls Corp. v. Vesco,* 490 F.2d 1334, 1348 (2d Cir.), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974). Thus, an injunction staying state proceedings is proper only if it falls within one of the statutory exceptions. *Chick Kam Choo,* 486 U.S. at 146, 108 S.Ct. at 1689; *Atlantic Coast Line R. Co.,* 398 U.S. at 286–87, 90 S.Ct. at 1742–43. Therefore, if an injunction against the Texas state court proceeding is to be issued it must be "expressly authorized by Act of Congress," "necessary in aid of (the court's) jurisdiction," or done "to protect or effectuate (the court's) judgments." 28 U.S.C. § 2283. Thus, the next step in the court's analysis, is to determine whether the injunction sought by Wells comes within any of the three exceptions provided in the statute. Here, Wells does not argue that there is any express congressional authorization for injunctions in this situation. Wells also does not contend that such an injunction would be proper as a means to protect or effectuate a prior court order or judgment as there have been no court orders or judgments rendered by this court. Rather, Wells asserts an injunction is permitted in this case because the Texas state court action threatens to waste judicial resources and subjects the parties to conflicting judgments. Thus, Wells, albeit indirectly, contends that an injunction in this case is "necessary in aid of (the court's) jurisdiction." Therefore, the court must next ascertain whether such a situation is present in the case before it.

### 1. Necessary in aid of the court's jurisdiction

In *Atlantic Coast Line Railroad Co.,* the Supreme Court explained that the necessary in aid of the court's jurisdiction exception to the Anti–Injunction Act means injunctions may be issued where "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R. Co.,* 398 U.S. at 295, 90 S.Ct. at 1747; *see also* Martin H. Redish, The

Anti–Injunction Statute Reconsidered, 44 U.CHI.L.REV., 717, 754 (1977) ("necessary in aid of jurisdiction" exception should be construed "to empower the federal court to enjoin a concurrent state proceeding that might render the exercise of the federal court's jurisdiction nugatory."). The "in aid of jurisdiction" exception usually involves *in rem* actions where the court has jurisdiction over a *res. Vendo Co. v. Lektro–Vend Corp.,* 433 U.S. 623, 641–42, 97 S.Ct. 2881, 2892–93, 53 L.Ed.2d 1009 (1977); *Winkler v. Eli Lilly & Co.,* 101 F.3d 1196, 1202 (7th Cir.1996); *Phillips v. Chas. Schreiner Bank,* 894 F.2d 127, 132 (5th Cir.1990); *James v. Bellotti,* 733 F.2d 989, 993 (1st Cir.1984); *see also* 17 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 4225, at 528–29 (1988). Thus, where the federal court's jurisdiction is in rem and the state court action may effectively deprive the federal court of the opportunity to adjudicate as to the *res,* the exception for necessity "in aid of jurisdiction" may be appropriate. *Compare Kline v. Burke Constr. Co.,* 260 U.S. 226, 230, 43 S.Ct. 79, 67 L.Ed. 226 (1922) (reversing federal court injunction against state court proceedings where contract obligations were in dispute, rather than rights relating to a *res* ) with *Penn Gen. Cas. Co. v. Commonwealth of Pennsylvania ex rel. Schnader,* 294 U.S. 189, 198, 55 S.Ct. 386, 390, 79 L.Ed. 850 (1935) (affirming federal district court's jurisdiction and holding that where two courts have concurrent jurisdiction over a *res,* the one taking possession first acquires exclusive jurisdiction to the extent necessary for the appropriate control and disposition of the property).

Here, the Texas case is merely a parallel state *in personam* action. The court points out that it is well settled that the mere existence of a parallel lawsuit in state court that seeks to adjudicate the same *in personam* cause of action does not in itself provide sufficient grounds for an injunction against a state action in favor of a pending federal action. *See In re Baldwin–United Corp. (Single Premium Deferred Annuities Ins. Litigation),* 770 F.2d

328 336 (2nd Cir.1985); *Vendo Co. v. Lektro–Vend Corp.,* 433 U.S. 623, 642, 97 S.Ct. 2881, 2893, 53 L.Ed.2d 1009 (1977) ("We have never viewed parallel *in personam* actions as interfering with the jurisdiction of either court."); *Kline v. Burke Construction Co.,* 260 U.S. 226, 230, 43 S.Ct. 79, 81, 67 L.Ed. 226 (1922); *Alton Box Bd. Co. v. Esprit de Corp.,* 682 F.2d 1267, 1271 (9th Cir.1982); *Heyman v. Kline,* 456 F.2d 123, 131 (2d Cir.), *cert. denied,* 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972); *Vernitron Corp. v. Benjamin,* 440 F.2d 105, 108 (2d Cir.) (stating that an injunction may be issued under the Anti–Injunction Act only if a "real or potential conflict threatens the very authority of the federal court"), *cert. denied,* 402 U.S. 987, 91 S.Ct. 1664, 29 L.Ed.2d 154 (1971); *see also* 17 WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 4225 at 534–35 ("The 'necessary in aid of its jurisdiction' exception does not allow a federal court to enjoin state proceedings merely because they involve issues presented in a federal in personam action."). As Justice Rehnquist noted for the plurality opinion in the *Vendo Co.* case:

> The traditional notion is that in personam actions in federal and state court may proceed concurrently, without interference from either court, and there is no evidence that the exception to § 2283 was intended to alter this balance. We have never viewed parallel in personam actions as interfering with the jurisdiction of either court. . . .

*Vendo Co.,* 433 U.S. at 642, 97 S.Ct. at 2893. Justice Rehnquist stated further that:

> "(A)n action brought to enforce (a personal liability) does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the

application of the principles of res adjudicata...."

*Id.* at 642, 97 S.Ct. at 2893 (quoting *Kline,* 260 U.S. at 230, 43 S.Ct. at 81).

In this case, there is neither an *in rem* action nor is there any ongoing federal jurisdiction that demands protection. The court concludes that the granting of the injunctions sought in this case cannot be considered "necessary in aid of its [the district court's] jurisdiction" under 28 U.S.C. § 2283. Therefore, this court cannot enjoin the Texas state court proceedings. The court recognizes that the existence of parallel proceedings in state and federal court presents multiplicity of suits, which results in additional inconvenience, expense, and delay to the parties involved in the litigation. The Texas state court proceeding, nonetheless, cannot be enjoined because of the provisions of 28 U.S.C. § 2283.

 Wells also points out that the Texas state court proceeding amounts to a compulsory counterclaim in the present case. The court notes that while Wells does not expressly cite to Rule 13(a) of the Federal Rules of Civil Procedure as a reason to enjoin the state court proceeding in Texas, in an abundance of caution, the court will nevertheless determine whether this rule warrants enjoining the Texas state court action. Federal Rule of Civil Procedure 13(a) provides:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that

claim, and the pleader is not stating any counterclaim under this Rule 13.

FED.R.CIV.P. 13(a). Thus, even if this argument was contemplated by Wells, Rule 13(a) has been held not to create an express statutory exception to the proscriptions of the Anti–Injunction Act. *Gunderson v. ADM Investor Services, Inc.,* 976 F.Supp. 818, 825 (N.D.Iowa 1997) *See Seattle Totems Hockey Club, Inc. v. National Hockey League,* 652 F.2d 852, 855 n. 5 (9th Cir.1981), *cert. denied sub nom. Northwest Sports Enters., Ltd. v. Seattle Totems Hockey Club, Inc.,* 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed.2d 1313 (1982); *Bruce v. Martin,* 680 F.Supp. 616, 620 (S.D.N.Y. 1988); *Carter v. Bedford,* 420 F.Supp. 927, 928 (W.D.Ark.1976); *Nolen v. Hammet Co., Inc.,* 56 F.R.D. 361, 362 (D.S.C.1972); *Potter v. Carvel Stores of New York, Inc.,* 203 F.Supp. 462 (D.C.Md.1962), *aff'd* 314 F.2d 45 (4th Cir.1963); *see also* 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1418 at 148 ("Clearly the language of Rule 13(a) cannot be construed as empowering the federal court to restrain state court proceedings."). Therefore, because the court has already concluded that the Anti–Injunction Act applies in this case and Rule 13(a) does not create an exception to the Anti–Injunction Act, Wells's Motion Requesting The Court To Enjoin Defendant From Proceeding With Its Duplicative Action In Texas is denied.

### III. CONCLUSION

In considering defendant Richardson Estate's request that the complaint be dismissed on the grounds of lack of the required jurisdictional amount and lack of federal question jurisdiction, the court concludes that plaintiff Wells has made a good faith claim that satisfies the requisite jurisdictional sum, and that a federal question is present. Therefore, defendant Richardson Estate's motion to dismiss for lack of subject matter jurisdiction is **denied.** Also, the court concludes that the plaintiff has established a *prima facie* case that this court may exercise personal jur-

isdiction over defendant Richardson Estate. Therefore, because the due process clause does not prohibit the exercise of personal jurisdiction over defendant Richardson Estate, defendant Richardson Estate's motion to dismiss for lack of personal jurisdiction is **denied.** Further, the court concludes that venue is proper in Iowa. Therefore, defendant Richardson Estate's motion to dismiss for improper venue is **denied.** Also, the court concludes that Iowa will best serve the convenience of the parties and the ends of justice. Therefore, defendant Richardson Estate's motion to dismiss pursuant to *forum non conveniens* is **denied.** Further, the court concludes that this is not a case where the issues would necessarily be better resolved in the pending Texas state court proceeding. Therefore, defendant Richardson Estate's motion to dismiss pursuant to the *Brillhart* doctrine is **denied.** Also, the court concludes that because no exception to the Anti–Injunction Act is present, plaintiff Wells's motion to enjoin the Richardson Estate from proceeding with its duplicative action in Texas is **denied.**

**IT IS SO ORDERED.**