**NORTHWEST AIRLINES,
INC., Appellee,**

v.

**AMERICAN AIRLINES, INC., Appellant.**

**No. 92–2858.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1992.

Decided April 6, 1993.

Janie S. Mayeron, Minneapolis, MN, argued (Julie M. Friedman and Elaine J. Erickson, on the brief), for appellant.

Thomas W. Tinkham, Minneapolis, MN, argued (Christopher J. Riley and Edward B. Magarian, on the brief), for appellee.

Before BOWMAN, WOLLMAN, and BEAM, Circuit Judges.

BOWMAN, Circuit Judge.

American Airlines appeals the District Court's [1] order granting Northwest Airlines' motion to enjoin American from proceeding with a lawsuit American filed against Northwest in a federal district court in Texas. We affirm.

The actions of the parties relevant to this case begin in May 1991 with the dispatch of a letter from the general counsel of American Airlines to her counterpart at Northwest Airlines, the entire text of which follows:

> You may not have seen the Texas Supreme Court decision of Sterner vs. Marathon Oil Company, so I have enclosed a copy. As we read that case, we have a decent chance of prevailing against Northwest **should we elect to sue** for tortious interference with respect to the nine employees you have hired in the past four months, particularly considering the skills they possess.
>
> I have never much fancied being a plaintiff, **but you folks may drive us to it.** Although we are flattered by all the attention, we hope you'll look elsewhere for your staffing needs.

Letter from Anne H. McNamara, General Counsel, American Airlines, Inc., to Richard B. Hirst, General Counsel, Northwest Airlines, Inc. (May 15, 1991) (emphasis added).

In the months before this letter was written, Northwest had been recruiting employees—with some success—from the ranks of American's department responsible for financial analysis, forecasting, and strategic planning; and from among American's employees in the department that determined the most profitable fare mix for American flights.

On June 6, 1991, Northwest's general counsel responded that he believed the *Sterner* case cited in the May 15 letter did not change Texas law regarding the hiring of at-will employees from other companies. The letter concluded, "We are, however, reviewing this conclusion with Texas counsel. I appreciate your informing us of your position and your concerns on this point." Letter from Richard B. Hirst, General Counsel, Northwest Airlines, Inc., to Anne H. McNamara, General Counsel, American Airlines, Inc. (June 6, 1991).

Six weeks later, on July 17, 1991, Northwest filed suit in the United States District Court for the District of Minnesota (hereinafter "the District Court") seeking a declaratory judgment that Northwest had lawfully hired at-will employees of American in the past, and could lawfully continue to hire such employees from American and other competitors in the future. On August 30, after another six weeks had passed, American filed suit against Northwest in the United States District Court for the Northern District of Texas. American's complaint seeks permanent injunctive

---

**1.** The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota.

relief and damages for unfair competition and tortious interference with contractual relationships.

On September 6, 1991, American filed a motion in the District Court to dismiss the Minnesota action, or to transfer it to Texas. The court denied the motion on October 30, 1991. Two days before the court's decision, Northwest filed its answer in the Texas suit[2], and the next day, October 29, Northwest filed a motion in Texas to stay the Texas case or transfer venue to Minnesota. It was not until January 28, 1992, that the Texas court denied Northwest's motion in an order that does not mention the October 30, 1991, order of the District Court in the Minnesota action. The denial of Northwest's motion became final when Northwest's February 24, 1992, motion to reconsider was denied May 12, 1992.

While waiting for a final decision on its motion to stay or transfer the Texas case, Northwest filed a motion in the Minnesota action on April 21, 1992, to enjoin American from proceeding with the parallel action in Texas. The District Court granted the motion on June 24, 1992. 792 F.Supp. 655.

In enjoining American from proceeding with its suit in Texas, the District Court found that "American ha[d] not shown that Northwest proceeded in bad faith or 'raced to the courthouse.'" 792 F.Supp. at 659. The court also found there were no compelling circumstances to make inapplicable the general rule that "the district court first obtaining jurisdiction over the parties should proceed to adjudicate the controversy and should restrain the parties from proceeding in a later filed action." *Id.* at 658.

After American's motion to reconsider was denied, American filed a notice of appeal, a request for expedited appeal together with its appellant's brief, and a motion to stay the injunction pending appeal, all on

August 18, 1992. This Court denied the stay, but expedited the briefing schedule and oral argument for the appeal. At oral argument on October 13, 1992, the parties informed the Court that trial in Texas, originally set for October 1992, has been continued, and that therefore the need for an expedited decision in this appeal was obviated.

The discretionary power of the federal court in which the first-filed action is pending to enjoin the parties from proceeding with a later-filed action in another federal court is firmly established. *See Minnesota Mining & Mfg. Co. v. Rynne*, 661 F.2d 722 (8th Cir.1981) (per curiam); *Martin v. Graybar Elec. Co.*, 266 F.2d 202, 204 (7th Cir.1959); *see also* 6 Charles A. Wright, et al., *Federal Practice and Procedure* § 1418, at 145–46 (2d ed. 1990) ("Indeed, by granting an injunction in this context, the court furthers the general federal policy against multiplicity of litigation embodied in [Federal Rule of Civil Procedure 13(a)].").

■ Injunctions of the sort at issue here, *i.e.*, orders enjoining a party from proceeding with a duplicative, second-filed lawsuit in another forum, are not subject to the *Dataphase* standards for injunctive relief.[3] In a case of this kind, the *Dataphase* factors are inapposite, since the question has nothing to do with the merits of the underlying controversy and is simply whether, as between two courts both having jurisdiction over the parties and the subject matter of the dispute, the court in which jurisdiction first attached should proceed to adjudicate the controversy and should restrain the parties from proceeding with the later-filed action. In this context, the governing standards are those set forth by this Court in *United States Fire Insurance Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488–89 (8th Cir.1990):

2. American did not answer Northwest's complaint until November 13, 1991, when it also filed a counterclaim alleging essentially the same claims as in its suit filed in Texas.

3. Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the

balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Dataphase Sys. Inc. v. CL Sys., Inc.,* 640 F.2d 109, 113 (8th Cir.1981) (en banc).

The well-established rule is that in cases of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to consider the case." *Orthmann v. Apple River Campground Inc.*, 765 F.2d 119, 121 (8th Cir.1985). This first-filed rule "is not intended to be rigid, mechanical, or inflexible," *Orthmann*, 765 F.2d at 121, but is to be applied in a manner best serving the interests of justice. The prevailing standard is that "in the absence of compelling circumstances," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir.1982), the first-filed rule should apply.

These standards apply here, even though *Goodyear* came to us in a somewhat different posture. There, the appeal was from the district court's decision on the merits of the first-filed action (a declaratory judgment action), with the defendant in that action arguing that the court had abused its discretion in not staying or dismissing the action in deference to a later-filed action brought by the defendant in federal court in Georgia. Unlike the present case, in *Goodyear* the district court had not been asked to enjoin the proceedings in Georgia, so an injunction was not in the picture. We believe, however, that this distinction is immaterial, and that the *Goodyear* standards are fully applicable to the case now before us. Within this legal framework, our review of the order of the District Court is under the abuse of discretion standard. *See Minnesota Mining & Mfg. Co.*, 661 F.2d at 724 (decision by district court in Minnesota to enjoin defendant in Minnesota action from proceeding with later-filed action brought by him in Georgia "will not be disturbed upon appeal unless the lower court has abused its discretion").

■ American first argues that Northwest's motion to enjoin the Texas action seeks to have review in this circuit of the Texas court's refusal to dismiss, stay, or transfer American's suit, and that Northwest should have sought review in the Fifth Circuit by way of a writ of mandamus or an interlocutory appeal.[4]

We disagree with American's procedural characterization of Northwest's motion to enjoin the Texas action. Northwest did not seek review of the Texas order in the Minnesota court. The Texas court's order that American's action should not be dismissed or transferred is not challenged by Northwest's motion in the present action. American's suit is still alive in the district court in Texas; it is stayed pending resolution of the Minnesota action and subsequent consideration of any res judicata effect of a decision in that action, but it has not been transferred or dismissed. The Texas action has indeed been stayed, in the sense that American has been enjoined from proceeding with that action, but that is not the result of review of the Texas court's order. Rather, the injunction granted by the District Court is the result of that court's independent application of the first-filed rule to the circumstances of this case.

American relies heavily on *Ellicott Machine Corp. v. Modern Welding Co.*, 502 F.2d 178 (4th Cir.1974). In that case, Ellicott filed an action in federal court in Maryland. Modern countered with a state court action in Kentucky that was removed to federal court there. Ellicott's motion to transfer the Kentucky action to the District of Maryland was denied. Thereafter the federal court in Maryland denied Modern's motion to dismiss the Maryland action or transfer it to Kentucky and granted Ellicott's motion to enjoin Modern from prosecuting the Kentucky action. The Fourth Circuit reversed the grant of the injunction. In so doing, the court declared that Ellicott "effectively ... appeal[ed] from one district judge to another." *Ellicott*, 502 F.2d at 181. The court continued, "Worse, because relief was obtained by injunction, an otherwise unappealable decision on venue has now been brought up on appeal." *Id.*

Though *Ellicott* is somewhat similar to the present case, it is not directly in point.

---

**4.** American acknowledges that the Texas district court's ruling was not appealable as a final order.

At the time the federal court in Kentucky denied Ellicott's motion to transfer the case to the federal court in Maryland, the latter court had not yet addressed the venue issue. But in the present case, before Northwest filed its transfer motion in the Texas court, the District Court already had denied American's motion to transfer the case to Texas. When the Texas court denied Northwest's transfer motion, the court was aware that the District Court already had denied American's motion to transfer the Minnesota action to Texas, yet the Texas court did not even mention the District Court's order, much less give it any deference. Here, unlike *Ellicott*, there was a deadlock between the two district courts, with the district of the later-filed action failing to defer to the district in which the action was first filed. *Ellicott* and this case are not on all fours with one another. We think the differences are significant.

Beyond that, we cannot accept the argument adopted in *Ellicott* that a motion for an injunction to stay parallel proceedings amounts to an appeal from the denial of a motion to transfer the parallel proceedings. Although we have great respect for the *Ellicott* court, we do not find *Ellicott* persuasive. As a practical matter, by denying the forum of the first-filed action the ability to enjoin prosecution of the second-filed action, merely because the forum of the second-filed action has denied a motion to transfer, *Ellicott* disserves judicial economy and opens up a potential for conflicting rulings as two separate courts grapple with the same controversy. This totally unnecessary and potentially confusing duplication of judicial effort is precisely what the first-filed rule is calculated to avoid. Laying aside the factual differences between *Ellicott* and the present case, we simply do not find *Ellicott* persuasive.

American also relies on a case from this Circuit, *Technitrol, Inc. v. McManus*, 405 F.2d 84 (8th Cir.1968), *cert. denied*, 394 U.S. 997, 89 S.Ct. 1591, 22 L.Ed.2d 775 (1969). In *Technitrol*, suit was filed in the Northern District of Georgia. Upon motion of the defendant, the case was transferred to the Northern District of Iowa. The Iowa court denied the plaintiff's mo-

tion to retransfer to Georgia and the plaintiff then sought a writ of mandamus in this Court, which denied the writ.

American finds support for its argument in our Court's comment that "we have grave doubt whether we have any right to review the validity of a transfer order made by a federal District Court outside the circuit." *Technitrol*, 405 F.2d at 87. Apart from the fact that Northwest is not asking us to review the Texas court's refusal to transfer, American does not point out in its brief that this comment is pure dicta. The above-quoted passage concludes: "we deem it unnecessary to resolve such question here." *Id.* Furthermore, *Technitrol* is factually distinct from the case presented here. There was only one filed action in *Technitrol* and thus no parallel litigation. The transferor court and the transferee court were in full agreement on the proper venue for the suit. We conclude that *Technitrol* is of no help to American's position.

For its second point on appeal, American, while acknowledging that the Northwest action was filed first, claims that the Northwest suit was anticipatory and thus not entitled to first-filed status and the concomitant right to proceed while the second-filed suit, American's, is held in abeyance.

As mentioned earlier in this opinion, the District Court's application of the first-filed rule, and its issuance of an injunction, will not be disturbed on appeal absent a finding that the court abused its discretion. *See Minnesota Mining & Mfg. Co.*, 661 F.2d at 724. To conserve judicial resources and avoid conflicting rulings, the first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction. *Goodyear*, 920 F.2d at 488. The rule, however, yields to the interests of justice, and will not be applied where a court finds "compelling circumstances" supporting its abrogation. *Id.* The District Court in its careful opinion

found no compelling circumstances for not giving effect to the first-filed rule.

Two factors here send up red flags that there may be compelling circumstances. First, Northwest was on notice that American was at least considering filing suit against Northwest. American's letter, however, gave no indication that a lawsuit was imminent, or that American was doing anything more than blowing smoke about a potential lawsuit. The contents of Northwest's response, three weeks later, indicated that Northwest was continuing to review the law and did not suggest that Northwest had acquiesced to American's position. In fact, Northwest's letter made it clear that Northwest believed American's legal analysis of the merits of a possible lawsuit by American was flawed, and did nothing to make American believe the matter was resolved. Further, it was another six weeks before Northwest filed its declaratory judgment action, and yet another six weeks after that before American filed its lawsuit in Texas, from which one might infer that American's lawsuit was not truly contemplated until after Northwest had filed its action.

The fact that Northwest's action was for declaratory judgment also merits a closer look, as such an action may be more indicative of a preemptive strike than a suit for damages or equitable relief. *See Goodyear,* 920 F.2d at 489 (noting that party against which first-filed declaratory judgment action was filed, whose second-filed action sought damages, "could be considered the 'true plaintiff' "). Northwest claimed, however, that its hiring was chilled by American's intimation that Northwest was violating the law, and the District Court found some evidence that Northwest's recruiting efforts had been adversely affected. Even upon reconsideration, when American asked the court to consider new evidence of additional hires by Northwest from American's ranks following the issuance of the injunction, the court was not persuaded that Northwest's recruiting efforts had not been stymied, or at least chilled, by American's claim that

Northwest's actions were illegal under Texas law.[5]

While these two factors may make this case a close call, the District Court considered them both carefully and found that Northwest, in filing first, had neither acted in bad faith nor raced to the courthouse to preempt a suit by American in Texas. Moreover, the court found that neither party is asserting claims in one forum that are not also asserted in the other. As found by the District Court, the Minnesota venue will be a more convenient forum than Texas, as most of the witnesses are Minnesota residents. American has not shown that it will suffer any undue burden if the case proceeds in Minnesota. We have no doubt that the District Court will be fair and impartial. Having carefully reviewed the record, we hold that the District Court did not abuse its discretion in its application of the first-filed rule and in enjoining American from proceeding further with its action against Northwest in Texas. The spectre of duplicative efforts and costs and of inconvenience to the parties, together with the waste of judicial resources inherent in parallel litigation, all provide support for the District Court's decision.

The order of the District Court is affirmed.

---

5. Northwest has represented to this Court that its new hires from American approached Northwest about switching jobs, not the other way around. American has not contested this representation.