**SUPREME INTERNATIONAL CORP., Plaintiff,**

v.

**ANHEUSER-BUSCH, INC., Defendant.**

**No. 96–3670–CIV.**

United States District Court,
S.D. Florida,
Miami Division.

April 16, 1997.

Aaron S. Podhurst, Podhurst Orseck Josefsberg Eaton Meadow Olin & Perwin, P.A., Miami, FL, for Plaintiff.

Mercer K. Clarke, Spencer H. Silverglate, Clarke Silverglate Williams & Montgomery, Miami, FL, Lawrence Kill, Anderson Kill & Olick, P.C., New York City, for Defendant.

## ORDER

EDWARD B. DAVIS, Chief Judge.

"Drink Bud Ice, but Beware the Penguins," is the slogan for Anheuser–Busch's national television commercial campaign featuring the stubby aquatic fowl terrorizing humans for their Bud Ice beer. Perhaps the company should have heeded its own ads a bit more closely, given the underlying lawsuit arguing that use of the penguins represents trademark infringement, unfair competition and deceptive business practices.

Anheuser-Busch ("A–B") moved on January 10, 1997, to dismiss the case, or in the alternative to stay proceedings, alleging that the lawsuit duplicates A–B's earlier-filed declaratory action in the Eastern District of Missouri. The Court held a hearing on this matter on April 15, 1997. Having thoroughly reviewed the pleadings and the oral arguments of counsel, the Court enters the following order granting A–B's motion to stay the proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff, Supreme International ("Supreme"), is a Florida corporation and the assignee of penguin design trademark rights belonging to Munsingwear, which began putting penguin designs on golf shirts and other apparel in 1954. A–B started airing the Bud Ice penguin commercials last year. The popular ad campaign soon expanded to include putting the penguin on clothing and other promotional items. Supreme contends that A–B's use of the penguin design violates its trademark.

Supreme's first overture to A–B on this subject was amicable. A Supreme vice-president wrote to A–B on October 10, 1996, offering to travel to St. Louis to discuss the prospect of Supreme selling its penguin de-

sign clothing in connection with the Bud Ice ad campaign. During a subsequent meeting, the vice president for the first time objected to A–B's use of the penguin design. In late November or early December, a Supreme lawyer contacted an A–B lawyer to again complain about the penguin design. However, according to A–B's in-house counsel, the two attorneys discussed settling the issue.

But the parties' relationship turned as cold as the penguin's Antarctic habitat when a New York law firm representing Supreme wrote to A–B on December 11, 1996, demanding not only that A–B stop putting the penguin design on clothing, but that it discontinue all advertising and promotional materials involving the "Beware the Penguins" slogan. The three-page letter concluded by stating that if A–B did not respond in writing within five business days, Supreme would "pursue additional legal action," including suing.

Rather than respond, A–B on December 19 (the fifth business day) filed a declaratory action in the Eastern District of Missouri against both Supreme and Munsingwear. The lawsuit seeks a declaration that A–B's penguin logo did not infringe on Supreme's trademark. Five days later, Supreme filed the instant action.

## DISCUSSION

■ A-B argues that the Court should dismiss this action based on the "first-filed" rule, which holds that when parties have instituted competing or parallel litigation in separate federal courts, the court initially having jurisdiction should hear the case. *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993). The primary purposes of the rule are to conserve judicial resources and avoid conflicting rulings. *Id.* The Eleventh Circuit, in addition to most other circuits, follows this rule. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir.1982) ("In the absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case").

■ Among the compelling circumstances that may justify departing from the rule are instances where one party, on notice of a potential lawsuit, files a declaratory judgment action in its home forum. *See e.g., Serco Serv. Co. v. Kelley Co.*, 51 F.3d 1037 (Fed.Cir.1995); *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746 (7th Cir.1987); *Northwest*, 989 F.2d at 1007. However, those circumstances do not automatically compel abandoning the first-filed rule. The matter is one of discretion for the trial court. *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487 (8th Cir.1990). And even where those conditions are present, "[t]he first-filed action is preferred, even if it is declaratory, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *Serco*, 51 F.3d at 1039 (internal quotation marks omitted).

Supreme argues that there are compelling circumstances here because A–B, aware that Supreme was about to file an infringement lawsuit, jumped the gun and filed the declaratory judgment action in Missouri. Supreme contends that this is impermissible forum shopping. Furthermore, Supreme argues that judicial economy favors hearing the action in Florida because Supreme is a Florida corporation with most of its offices and employees here, while A–B is a national operation. Certainly, the fact that A–B sought a declaratory judgment so quickly after being notified of a potential infringement lawsuit raises the red flag of forum shopping, and warrants a close examination of the record. Although this is a close call, Supreme has failed to demonstrate compelling circumstances that would justify ignoring the first-filed rule.

One difficulty with this case is the posture in which it comes to the Court. Supreme's lawsuit is the second-filed case. Even if the Court were inclined to agree with Supreme that the case should be tried here, it has no authority to mandate this result. If the Court does not dismiss or stay Supreme's action, there is no guarantee that the Missouri court would follow suit and dismiss the declaratory judgment action. The parties would then be left with the exact situation

that the first-filed rule was designed to prevent—lawsuits on identical issues proceeding simultaneously in separate courts.

■ Because of this problem, many of the cogent arguments that Supreme makes are more properly presented to the Missouri court. That court, as the "first-filed" court, is the more appropriate forum in which to determine whether the first-filed case should proceed, or whether it should give way for reasons of judicial economy to this action. Indeed, all the cases that Supreme cites that have not followed the first-filed rule involve opinions from courts with jurisdiction over first-filed actions. None involved decisions from courts hearing second-filed lawsuits for damages. *See, e.g., Serco,* 51 F.3d 1037; *Tempco,* 819 F.2d at 746; *EEOC v. University of Pa.,* 850 F.2d 969 (3d Cir.1988); *Mission Ins. Co. v. Puritan Fashions Corp.,* 706 F.2d 599 (5th Cir.1983); *Ven–Fuel, Inc. v. Department of the Treasury,* 673 F.2d 1194 (11th Cir.1982); *Amerada Petroleum Corp. v. Marshall,* 381 F.2d 661 (5th Cir.1967); *Lonza, Inc. v. Rohm and Haas, Inc.,* 951 F.Supp. 46 (S.D.N.Y.1997); *Ex–Im Plastics, Inc. v. Miwon America, Inc.,* No. CV 96–5710 (C.D.Cal. Oct. 28, 1996); *A.C. Nielsen Co. v. Spectrum Planning, Inc.,* 1986 WL 14167 (N.D.Ill.Dec.9, 1986).[1] Most of those cases also involved a court's discretionary authority to hear a declaratory judgment, an issue not directly before this Court.

■ That issue aside, the Court believes the first-filed rule should apply in this case. First, contrary to Supreme's argument, A–B did not run to the courthouse as soon as it was aware of a problem. While Supreme's December 11 letter certainly makes it apparent that an infringement lawsuit is imminent, the letter was by no means the first time that Supreme had objected to A–B's use of the penguin design, and therefore raised the specter of a lawsuit. Supreme representatives had twice previously complained, orally and in writing, without A–B filing any action.

Second, as A–B argues, the December 11 letter was the culmination of a series of mixed signals that Supreme sent on the issue. Supreme initially indicated an interest in working with A–B on the Bud Ice campaign. Then it complained, but simultaneously expressed a willingness to settle the matter. Finally, Supreme threatened a lawsuit in the December 11 letter. Given these contradictory signs, it was not surprising that A–B was confused. A–B. had a lot at stake in the high-profile, high-dollar Bud Ice campaign. It is logical that it would seek to resolve the situation as quickly as possible by seeking a declaration as to its trademark rights. There is no requirement that a business threatened with an infringement lawsuit sit back and wait to see if the other party is serious about suing. *See Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed.Cir. 1993) (purpose of declaratory judgment is "to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist").

Third, Supreme has failed to show that judicial economy would best be served by trying the case in this district. Certainly, it would be more convenient for Supreme, a Florida corporation with most of its offices and personnel here. However, A–B, based in St. Louis, could make the same argument for trying the case in Missouri. And while A–B is certainly a national corporation, the trademark right that Supreme purchased and has put at issue comes from a Minnesota corporation and is marketed nationally.

---

1. In addition, the cases had compelling circumstances that do not exist here. For example, in *EEOC,* 850 F.2d 969 the EEOC issued an investigatory subpoena, but gave the university a grace period in which to respond. The university sued to challenge the validity of the subpoena. The EEOC responded by filing a second action to enforce the subpoena. *Id.* at 973–74. In that case, the second-filed action represented the continuation of a legal process underway before the first action was filed. There is no initial legal action here.

*Mission Insurance,* 706 F.2d 599, involved a case where an insurer persuaded an insured to wait to file a lawsuit until the insurer had provided a written statement on a coverage issue. Rather than provide the statement, the insurer filed a declaratory action. The court dismissed that action in favor of the insured's later-filed lawsuit. *Id.* at 600. There is no record of such misleading actions in this case.

608

Thus, there are equally strong considerations for trying the case in Missouri or Florida.

### CONCLUSION

Supreme has not demonstrated a compelling reason, such as judicial economy or impermissible forum shopping, to warrant departure from the first-filed rule. Accordingly, it is

ORDERED AND ADJUDGED that Anheuser–Busch's Motion to Dismiss or, in the Alternative, to Stay Proceedings, (filed January 10, 1997) is **GRANTED.** This case is **STAYED** pending a decision from the Eastern District of Missouri whether to hear the declaratory judgment action.