# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 01-3503

_____

Verizon Communications, Inc.;    *
Verizon Trademark Services, LLC, *
formerly known as Bell Atlantic  *
Trademark Services, LLC,         *
                                 *
          Appellants,            *    Appeal from the United States
                                 *    District Court for the
     v.                          *    Eastern District of Missouri.
                                 *
Inverizon International, Inc.,    *
                                 *
          Appellee.              *


_____

Submitted: March 11, 2002
Filed: July 11, 2002

_____

Before HANSEN, Chief Judge, BEAM and BYE, Circuit Judges.

_____

HANSEN, Circuit Judge.

Verizon Communications, Inc. and Verizon Trademark Services, LLC (collectively "Verizon") appeal the district court's decision to stay this declaratory judgment action pending resolution of a state court action filed by Inverizon International, Inc. ("Inverizon"). We reverse and remand for further proceedings.

## I.

On July 25, 2000, Inverizon sent a cease and desist letter to Verizon, demanding that it refrain from using the "Verizon" mark because such use was likely to cause confusion with Inverizon's mark. The letter explained that Inverizon uses its service mark for agricultural business and management consulting services and asserted that the use of Verizon's mark "in connection with a range of services, some of which overlap with services provided by [Inverizon] . . . constitutes infringement of [Inverizon's] trademark rights, as well as unfair competition under § 43 of the Lanham Act, 15 U.S.C. § 1125." (Appellants' Add. at 6.) The letter added that "[s]uch use also violates various state anti-dilution statutes and other state laws." (Id.) Inverizon wrote that it "would prefer to resolve this matter amicably and avoid unnecessary legal action." (Id.) The letter demanded a response within 14 days, stating a timely response with indications that Verizon will refrain from using the mark "may obviate more formal legal action." (Id. at 7.)

On August 7, 2000, within the 14-day response period, Verizon contacted Inverizon in an effort to resolve this matter, and neither party raised the subject of litigation. Verizon asserted that there is no likelihood of confusion or dilution because its communications services are sufficiently distinct from Inverizon's agricultural consulting services. Inverizon's trademark counsel disagreed, indicating that there was an overlap in the "wireless business" provided by the companies. (App. at 94.) Verizon asked for clarification of and details pertaining to this asserted overlap in services, but Inverizon provided nothing.

After waiting three weeks for additional information from Inverizon supporting its demands and detailing the alleged overlap in services, Verizon filed this declaratory judgment suit in federal district court in Missouri. Verizon seeks a declaration that the use of its mark does not infringe upon Inverizon's rights or

constitute unfair competition in violation of the Lanham Act or various state statutes.

Six weeks later, on October 16, 2000, Inverizon filed suit against Verizon in Missouri state court, expressly denying that it was seeking any relief under federal law. Inverizon then moved to dismiss or stay the federal action on the basis of the pending state court action. Likewise, Verizon filed a motion in state court to dismiss the state action in light of the federal suit.

The parties proceeded with discovery in the federal action until May 15, 2001, when the federal district court granted Inverizon's motion to stay the federal proceedings. Subsequently, the state court denied Verizon's motion to dismiss the state court action, relying heavily on the federal court's decision to abstain and the federal court's finding that Verizon had wrongfully deprived Inverizon of its choice of forum. Verizon now appeals the district court's decision to stay the federal declaratory judgment action.

## II.

We review the district court's grant of a motion to stay in a declaratory judgment action for an abuse of discretion. <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 289-90 (1995); <u>see</u> <u>Brillhart v. Excess Ins. Co. of Am.</u>, 316 U.S. 491, 498 (1942). In <u>Wilton</u>, the Court held that the district court did not abuse its discretion by staying a declaratory judgment case based on diversity jurisdiction where a subsequently filed state court action presented an "opportunity for ventilation of the same state law issues." 515 U.S. at 290. While declaring that the abuse of discretion standard governed cases of abstention in the declaratory judgment context, the Court also plainly indicated that it was not attempting "to delineate the outer boundaries of that discretion in other cases, for example, cases raising <u>issues of federal law</u> or cases in which there are no parallel state proceedings." <u>Id.</u> (emphasis added). As in <u>Wilton</u> and <u>Brillhart</u>, the present case involves a subsequently filed parallel state court

proceeding, but unlike <u>Wilton</u> and <u>Brillhart</u>, the present declaratory judgment action is based on a federal question rather than diversity jurisdiction. Thus, the boundaries of the district court's discretion in the present case are not specifically delineated in either <u>Wilton</u> or <u>Brillhart</u>, neither of which involved a federal question.

In general, we have described the abuse of discretion standard as follows:

> [W]hen we say that a decision is discretionary, or that a district court has discretion to grant or deny a motion, we do not mean that the district court may do whatever pleases it. The phrase means instead that the court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law. An abuse of discretion, on the other hand, can occur in three principal ways: when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

<u>Kern v. TXO Prod. Corp.</u>, 738 F.2d 968, 970 (8th Cir. 1984). After carefully reviewing the record, we conclude that the district court failed to consider a factor that should have been given significant weight in this case and also committed a clear error of judgment.

The district court's decision to stay this action was based on the following factors: (1) the two actions involve the same issues between the same parties, (2) the state court action can resolve all of the issues, (3) it would be inefficient to require litigation in two separate actions, and (4) Verizon wrongfully deprived Inverizon of its choice of forum. These findings indicate a consideration of the factors and principles enunciated in <u>Brillhart</u> and <u>Wilton</u>. However, the district court failed to mention one very significant factor present in this case that simply was not at issue in either <u>Brillhart</u> or <u>Wilton</u>–that is, the presence of a federal question that is not

4

present in the state court action.  Cf. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 (1983) (indicating that "the presence of federal-law issues must always be a major consideration weighing against surrender" of federal jurisdiction).

Patent and trademark cases are commonly brought in federal court as declaratory judgment actions seeking to establish the validity of a federally registered patent or mark.  10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2761 (3d ed. 1998).  Additionally, "'federal courts now decide all but a few trademark disputes.  State trademark law and state courts are less influential than ever.  Today the Lanham Act is the paramount source of trademark law in the United States, as interpreted almost exclusively by the federal courts.'"  Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 782 n.16 (1992) (quoting The United States Trademark Association Trademark Review Commission Report and Recommendations to USTA President and Board of Directors, 77 Trademark  Rep. 375, 377 (1987)) (Stevens, J., concurring in judgment).  While we recognize that the Lanham Act claims involved here may not present novel issues of federal law, see Youell v. Exxon Corp., 74 F.3d 373, 376 (2d Cir.) (stating "a federal question of first impression must all but demand that the federal court hear the case"), cert. denied, 517 U.S. 1251 (1996), and that the state court has been given concurrent jurisdiction over them, federal law is nonetheless controlling and a factor worthy of significant weight.

Contrary to the district court's finding, the record reveals that the two actions do not involve the same issues because the state court action specifically states that it "pleads no federal cause of action under the Lanham Act, 15 U.S.C. § 1125 et seq. or any other Federal Act."  (Appellants' Add. at 15.)  The alleged Lanham Act violations, however, appear to be the gravamen of the federal complaint.[1]  The

---

[1]The complaint also asserts the same state law claims that are present in the state court case.

asserted Lanham Act violations were of prime importance in Inverizon's cease and desist letter, which referenced the state antidilution statutes as a secondary concern. Verizon sought to clear the cloud over its mark by filing this federal declaratory judgment action, seeking a declaration that its use of the "Verizon" mark does not infringe Inverizon's rights in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a), does not constitute unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); and, mirroring Inverizon's cease and desist letter's secondary concern, does not dilute Inverizon's mark or infringe Inverizon's rights in violation of any state statutes or common law. The district court failed to consider the fact that federal law governs the primary claims raised in the declaratory judgment suit and only issues of state law are raised in the state court action. The district court abused its discretion in failing to consider this significant factor. See Prudential Ins. Co. of Am. v. Doe, 140 F.3d 785, 790 (8th Cir. 1998) (holding that under the Brillhart analytical framework, the federal character of the claim supports the denial of abstention).

Additionally, while not dispositive, it is relevant that Verizon filed its declaratory judgment action first. Wells' Dairy, Inc. v. Estate of J.P. Richardson, Jr., 89 F. Supp. 2d 1042, 1060 (N.D. Iowa 2000). "We are mindful of the general proposition that declaratory judgments are not to be used defensively to deny a prospective plaintiff's choice of forums." Doe, 140 F.3d at 790. But the facts here do not support a finding that Verizon engaged in improper forum shopping or an anticipatory filing, and the district court's contrary finding amounts to a clear error of judgment.

While it was clear that Inverizon may have been contemplating legal action, the cease and desist letter did not indicate that litigation was imminent. See Northwest Airlines, Inc. v. Am. Airlines, Inc., 989 F.2d 1002, 1007 (8th Cir. 1993) (finding no anticipatory filing where cease and desist letter did not indicate suit was imminent). The letter stated only that Inverizon "would prefer to resolve this matter amicably and avoid unnecessary legal action," and that a timely response "may obviate more formal

6

legal action." (Appellants' Add. at 6-7.) Verizon responded within the required time period, and the conversation between company representatives at that time did not include any reference to litigation. The Verizon representative requested information concerning Inverizon's perceived overlap of services between the two companies. When no response was forthcoming, Verizon filed this federal declaratory judgment action in the Eastern District of Missouri to determine the validity of its mark.

Verizon chose to bring this action in Missouri, the state of Inverizon's incorporation at the time,[2] and not some inconvenient forum. Verizon did not file suit immediately upon receiving the cease and desist letter but waited approximately six weeks, first taking time to respond to Inverizon and to request additional information. Inverizon did not file its state court action until six weeks after the federal suit was filed. See Northwest Airlines, 989 F.2d at 1007 (noting that where the parallel state court lawsuit was not filed until six weeks after the initial declaratory judgment action was filed, it indicates that the parallel "lawsuit was not truly contemplated" until after the first lawsuit was filed); Wells' Dairy, 89 F. Supp. 2d at 1061 (finding no anticipatory suit where federal declaratory judgment action was filed a month after receiving the cease and desist letter and the state suit was not filed until sixteen days after being served with the declaratory suit). Furthermore, Inverizon can hardly complain that it was deprived of its choice of forum when it explicitly chose not to raise a federal Lanham Act claim in its state petition. See Doe, 140 F.3d at 790. These facts do not indicate a rush to the court house by Verizon.

---

[2]After Verizon filed this declaratory judgment action, Inverizon changed its state of incorporation from Missouri to Delaware, which is also Verizon's state of incorporation. This act in combination with Inverizon's specific tactical decision to plead no federal cause of action in the state suit leads to the inference that Inverizon was using the state court litigation as a sword rather than a shield–attempting to defeat removal to federal court on the basis of either diversity or federal question jurisdiction. See Wells' Dairy, 89 F. Supp. 2d at 1060 n.8.

7

The specific circumstances of this case render the district court's stay order an abuse of discretion.

## III.

Accordingly, we reverse the judgment of the district court, we vacate its stay order, and we remand for further proceedings not inconsistent with this opinion.

BYE, Circuit Judge, concurring.

Our reversal and remand is carefully based upon the district court's *failure to consider* the presence of the federal trademark issues, so we avoid directly holding that the district court's stay constituted an abuse of discretion because of the mere *presence* of federal trademark issues. My personal view is that a district court should not stay a federal action when federal questions predominate over state law issues, and for that reason I would not have stayed Verizon's suit if I were the district judge. But my personal disagreement with the district court does not equate to an abuse of discretion because our cases prohibit us from finding an abuse of discretion based solely upon the presence of a federal issue or claim. See Horne v. Firemen's Retirement Sys., 69 F.3d 233 (8th Cir. 1995) (Age Discrimination in Employment Act claim); Int'l Ass'n of Entrepreneurs v. Angoff, 58 F.3d 1266 (8th Cir. 1995) (Employment Retirement Income Security Act issue).

If we had held that the district court abused its discretion solely because of the presence of the federal trademark issues, Horne and Angoff would have compelled me to dissent. Our opinion makes no mention of those decisions, however, because as I explained above the basis for our decision is subtly distinct from the reasoning that supported those two cases. I nevertheless feel compelled to write separately to express my disagreement with those decisions, and to suggest that their

reconsideration may be in order. Why should a federal action involving federal issues be stayed in favor of a strike suit in state court?

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.