**AG LEADER TECHNOLOGY, INC., Plaintiff,**

v.

**NTECH INDUSTRIES, INC., Defendant.**

No. 4:08–cv–0168–JAJ.

United States District Court, S.D. Iowa, Central Division.

Sept. 4, 2008.

---

Edmund J. Sease, Christine Lebron–Dykeman, Janet E. Phipps–Burkhead, Jeffrey D. Harty, McKee Voorhees & Sease PLC, Des Moines, IA, for Plaintiff.

Irfan A. Lateef, Paul A. Stewart, Timothy J. Goodson, Knobbe Martens Olson & Bear LLP, San Francisco, CA, J. Campbell Helton, Whitfield & Eddy, PLC, Des Moines, IA, for Defendant.

## ORDER

JOHN A. JARVEY, District Judge.

This matter comes before the court pursuant to Defendant Ntech Industries' Motion to Dismiss (Dkt. No. 1). On July 24, 2008, Plaintiff Ag Leader filed a Response to the Motion to Dismiss (Dkt. No. 21) and an Amended Complaint (Dkt. No. 20).

## I. FACTUAL AND PROCEDURAL HISTORY

Defendant NTech Industries ("NTech") manufactures "active plant sensors" which are used primarily in the production of corn and soy beans. "Active plant sensors gather information about plants by emitting light toward the plant and soil and measuring the properties of the light that reflects back." (NTech Memorandum of Law No. 1 at 2). This technology allows a farmer to more selectively apply herbicides without unduly damaging crops. Ntech holds four patents with the U.S. Patent Office for these products, patents '626, '873, '440, and '996.

Plaintiff Ag Leader, an Iowa company, manufactures and markets "precision farming equipment." (Ag Leader Ex. 4). Ag Leader is the exclusive distributor of "active crop canopy sensing technology" that is manufactured by Holland Scientific, Inc. ("Holland"). "The sensors can be used to detect the health or stress of growing crops. Applications include on-the-go variable rate fertilizer, herbicide, fungi-

cide, pesticide or plant growth regulator application; or mapping specific crop attributes or conditions while crop scouting." (Ex. 4).

On March 11, 2008, NTech filed a patent infringement lawsuit against Holland Scientific, Inc., in the United States District Court for the District of Arizona. (Civ.08–475–PHX–SRB). The suit alleged infringement of four of NTech's active plant sensor patents. On May 2, 2008, Holland, along with co-plaintiff Ag Leader, filed suit against NTech in this district. The same day, in the District of Arizona, Holland filed a motion to dismiss for lack of personal jurisdiction and a motion to transfer venue from the District of Arizona to the Southern District of Iowa asserting that Ag Leader was a necessary and indispensable party over whom there is no personal jurisdiction in Arizona.

On March 28, 2008, Holland entered into an exclusive distributorship agreement with Ag Leader. In the agreement, Ag Leader agreed to defend or settle all lawsuits that allege intellectual property infringements, including patent suits. (*See* Ag Leader Ex. 5).

On June 30, 2008, NTech filed the present motion to dismiss, arguing (1) NTech filed first in the District of Arizona and, thus, Holland's claim should be dismissed; (2) Ag Leader lacks standing as plaintiff in the Iowa suit; and (3) Holland's state law tort claims are patent suits and as such are under the exclusive jurisdiction of federal courts.

On July 24, 2008, Ag Leader filed a response to the present Motion to Dismiss, as well as an Amended Complaint. (Dkt. No. 20). In the Amended Complaint, Holland Scientific, Inc., was no longer a party. Additionally, Ag Leader abandoned its state-law tort claims, seeking only a declaratory judgment stating that the product they intend to distribute does not infringe on NTech's patents.

On July 7, 2008, the U.S. District Court for the District of Arizona denied Holland's Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Transfer Venue. The court reasoned that in order to dismiss the case for a lack of personal jurisdiction on the grounds that Ag Leader did not have sufficient contacts to Arizona, it would first have to join Ag Leader in the case. The Court declined to join Ag Leader.

> [I]n order to find a lack of personal jurisdiction, the Court would first have to find that Ag Leader was a necessary and indispensable party. And the private contractual relationship between Holland Scientific and Ag Leader cannot create some cause of action that didn't previously exist that NTech has to assert against Ag Leader.
>
> This is simply an exclusive distributorship agreement which, for reasons known only to the parties to the agreement, also included Ag Leader's agreement to defend and indemnify Holland Scientific in the event that they were sued for patent infringement. There is no indication that this Court could not afford complete relief between the parties without the joinder of Ag Leader. That is the test for necessary and indispensable party.
>
> The other test is whether the party claims an interest related to the subject of the action that is so situated that disposition may, as a practical matter, impede that party's ability to protect that interest. And that is also not the situation we have here.
>
> Ag Leader is a distributor, not a licensee. It is not a necessary and indispensable party. Therefore, the alternative for transfer of venue is similarly not appropriate.

(Ex. 7 at 13–14).

On August 4, 2008, NTech filed a reply regarding Ag Leader's response and

amended complaint. (Dkt. No. 22). In its reply, NTech narrowed its grounds for dismissal to: (1) the first-filed rule; (2) the customer-suit rule, arguing that Ag Leader is a customer and therefore cannot bring this suit; and (3) lack of subject matter jurisdiction, arguing that there is no current case or controversy between the two parties.

The Court finds dismissal appropriate for the following reasons: (1) the first-filed suit rule, which dictates that the first-filed action in the District of Arizona should proceed; (2) Ag Leader's status as a customer instead of a manufacturer makes it a disfavored party in a patent action; and (3) Ag Leader is controlling the litigation in the Arizona case, therefore it will have a full and fair opportunity to litigate.

## II. CONCLUSIONS OF LAW

### A. The First–Filed Rule

In NTech's original motion to dismiss (Dkt. No. 13), NTech sought dismissal of then co-plaintiff Holland based on the first-filed rule, as the litigation in this district was the same as the litigation that NTech filed against Holland in the District of Arizona. After Ag Leader filed an amended complaint (Dkt. No. 20), Holland was no longer a party and the first-filed issue arguably became moot. NTech argues, however, that the principles of the first-filed rule, along with the fact that Ag Leader is actively participating in the Arizona suit, compels dismissal or a stay of the Ag Leader suit in this district.

▇▇▇ The first-filed rule is one "that typically determines, 'in the absence of compelling circumstances,' which of two concurrent federal court actions should proceed to judgment." *Smart v. Sunshine Potato Flakes, L.L.C.,* 307 F.3d 684, 687 (8th Cir.2002) (quoting *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.,* 920 F.2d 487, 488 (8th Cir.1990)). "The first-filed rule gives priority when parallel litigation

has been instituted in separate courts, to the party who first establishes jurisdiction in order to conserve judicial resources and avoid conflicting rulings." *Keymer v. Management Recruiters Int'l, Inc.,* 169 F.3d 501, 503 n. 1 (8th Cir.1999). The rule is intended to avoid "totally unnecessary and potentially confusing duplication of judicial effort." *Northwest Airlines v. American Airlines,* 989 F.2d 1002, 1006 (8th Cir.1993). Although it is referred to as the first-filed *rule,* it is only one factor the court should consider in deciding which case should proceed first. *Smart,* 307 F.3d at 687.

#### 1. Parallelism

▇▇▇ The first question in the first-filed analysis is whether the two litigations are "parallel." *See Aventure Commun. Tech. v. Nextel West Corp.,* No. C07–4094–MWB, 2008 WL 73657, at *5–6 (N.D.Iowa Jan. 3, 2008). In *CRST Van Expedited, Inc. v. J.B. Hunt Transport, Inc.,* the U.S. District Court for the Northern District of Iowa applied the abstention doctrine's definition of "parallelism" to a first-filed case:

The Eight Circuit Court of Appeals has not discussed the meaning of 'parallel' in [the first-filed] context. The Sixth Circuit Court of Appeals has determined two actions are parallel only where the parties and issues are identical. *Baskin v. Bath Township Bd. Of Zoning Appeals,* 15 F.3d 569, 571–72 (6th Cir.1994). Even where the two claims arise out of the same basic facts, the proceedings may not be parallel if they contest different aspects of the issue, seek different relief, or do not include all of the same parties. *Id.* at 572. The Fourth Circuit Court of Appeals considers lawsuits to be parallel "if substantially the same parties litigate substantially the same issues in different forums." *Al–Abood v. El–Shamari,* 217 F.3d 225, 232–33 (4th Cir.2000) (quoting *New*

*Beckley Mining Corp. v. International Union,* 946 F.2d 1072, 1073 (4th Cir. 1991)).

*CRST Van Expedited, Inc. v. J.B. Hunt Transport, Inc.,* No. C 04–79 LRR, 2005 WL 741911, 2005 U.S. Dist. LEXIS 5558 (N.D.Iowa March 31, 2005).

▮▮▮ In determining whether the Arizona and Iowa cases are parallel, the court also looks to res judicata principles. "The doctrine of res judicata rests at bottom upon the ground that the party to be affected, or some other with whom he is in privity, has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction." *Richards v. Jefferson County,* 517 U.S. 793, 797 n. 4, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996). One of the elements of a res judicata claim is whether the two suits involve the same parties or "those [parties] in privity to them." *Yankton Sioux Tribe v. United States HHS,* 533 F.3d 634 (8th Cir.2008). Courts have defined "parties in privity" as (1) those who had substantially the same interest and (2) those who were able to represent their interests in the first suit. *Id.* The Supreme Court wrote,

> One who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly to the knowledge of the opposing party, is as much bound by the judgment and as fully entitled to avail himself of it as an estoppel against an adverse party, as he would be if he had been a party to the record.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 597, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quoting *Souffront v. Compagnie Des Sucreries De Porto Rico,* 217 U.S. 475, 487, 30 S.Ct. 608, 54 L.Ed. 846 (1910)) (internal quotation marks omitted).

In the present case, the parties are not the same. The parties to the Arizona litigation are NTech (plaintiff) and Holland (defendant), while the parties to the Iowa litigation are Ag Leader (plaintiff) and NTech (defendant). The question, then, is whether Ag Leader is able to represent its interest in the Arizona litigation, to which it is not a party. The court believes it can. According to the exclusive distributorship agreement between Holland and Ag Leader, Ag Leader is responsible for defending or settling any suits "arising out of or relating to infringement or alleged infringement of any patent," as well as other intellectual property claims. (*See* Ex. 5). Therefore, Ag Leader is controlling the litigation in Arizona. It can also join it. Since it is controlling the litigation, it has a full opportunity to represent its rights. The court finds that Ag Leader is a "party in privity" for the purposes of determining whether the Iowa and Arizona litigations are parallel.

▮▮▮ The next question in the parallel analysis is whether the two suits involve the same or substantially the same issues. "[A] primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1463 (Fed.Cir.1990). In the Arizona case, NTech is suing Holland for damages, an injunction and declaratory relief based on their belief that Holland's product, "active crop canopy sensing technology," infringes on four of its patents. In the Iowa litigation, Ag Leader seeks declaration that they will not infringe on Ntech's patents if they sell Holland's crop-canopy sensing technology. The primary issue in both cases is whether Holland's product infringes NTech's patents. The issues are substantially the same in both cases.

The court finds that the Arizona litigation and the Iowa litigation are parallel as

they involve parties in privity, as well as the same or substantially the same issues.

### 2. *Whether the Court Should Disregard the First– Filed Rule*

 Having determined that the Arizona and Iowa litigations are parallel and that the first-filed rule applies, the court must next determine whether there is any reason not to allow the Arizona litigation to proceed first. As discussed above, the first-filed rule is not a mandatory rule but one factor in deciding which of two concurrent federal cases should proceed first. In *Northwest Airlines,* the Eight Circuit Court of Appeals discussed "two red flags" that should compel a court to disregard the first-filed rule. The first circumstance is where the first-filed plaintiff "races to the courthouse to preempt a suit" by the defendant. *Northwest Airlines,* 989 F.2d at 1007. The second red flag is where the plaintiff in the first suit seeks only declaratory judgment, "as such an action may be more indicative of a preemptive strike than a suit for damages or equitable relief." *Id.* Neither "red flag" is present here. There is no evidence that there was a "race to courthouse." *Id.* Additionally, NTech seeks not only declaratory judgment, but also damages and an injunction.

 There is an additional exception applicable in patent cases, known as the "customer suit exception," wherein courts will allow the latter-filed suit to proceed where the first suit is against the customer instead of the manufacturer. *See Emerson v. Black & Decker Co.,* 606 F.2d 234, 242 (8th Cir.1979); *Codex v. Milgo Elec. Corp.,* 553 F.2d 735, 737–38 (1st Cir.1977); *P.S.I. Nordic Track, Inc. v. Great Tan, Inc.,* 686 F.Supp. 738, 740 (N.D.Minn. 1987). In such an instance, a court does not abuse its discretion when it dismisses the first suit in favor of the second suit against the manufacturer. "[I]n reality, the manufacturer is the true defendant in the customer suit." *Codex v. Milgo Electronic Corp.,* 553 F.2d 735, 737–38 (1st Cir.1977).

The opposite situation is present here. The defendant in the first case, Holland, is the manufacturer, whereas Ag Leader, the plaintiff in the second case, is the customer. This factor weighs heavily in favor of following the first-filed rule and allowing Holland, the manufacturer, to proceed first. There is no perceivable advantage to presenting a distributor's arguments over a competing patent holder.

Considering the absence of these "red flags" and the policy of preserving judicial economy, the court finds that application of the first-filed rule is appropriate here and the Arizona litigation should proceed first.

 The court further finds that dismissal of this action is appropriate. In deciding whether to stay or dismiss the case, the court finds no reason to grant a stay. The plaintiff is not threatened with a loss of its cause of action by reason of the statute of limitations. Dismissal will best serve the interests of justice and, particularly, judicial economy. Because Ag Leader is controlling the litigation, it will "not be deprived of an available and appropriate forum" for its claims. *Aventure,* 2008 WL 73657, at *7. The case is dismissed without prejudice.

### B. Dismissal for Lack of Subject Matter Jurisdiction

 NTech argues that Ag Leader has no standing to invoke Article III jurisdiction because there is no actual case or controversy. NTech argues that the case is premature because Ag Leader has stated that it will not begin selling the disputed product until 2009. Ag Leader contends that actual sales are unnecessary to bring a declaratory suit pursuant to *Med-Immune, Inc. v. Genentech, Inc.* Rather, it

is enough to show that they are taking "significant concrete steps" towards the distribution of Holland's products. (Ag Leader Br. at 7). Further, because NTech has sued Holland over the same matter, Ag Leader argues that there is a present case or controversy.

The Declaratory Judgment Act states, "In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2000). Here, Ag Leader seeks a declaration that (1) NTech's patent is invalid and (2) that its product does not infringe on NTech's patent.

The issue presented concerns the point at which a plaintiff can establish an Article III case or controversy in a patent case. The Supreme Court recently clarified that a party need not infringe on a patent "before seeking declaratory judgment in federal court that the underlying patent is invalid, unenforceable, or not infringed." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 S.Ct. 764, 777, 166 L.Ed.2d 604 (2007). Prior to MedImmune, the Federal Circuit had formulated a two-prong test to determine the propriety of a declaratory judgment patent suit.

> There must be both (1) an explicit threat or other action by the patentee which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit; and (2) the present activity by the declaratory judgment plaintiff which could constitute infringement, or concrete steps taken with the intent to conduct such activity.

*Teva Pharms. USA, Inc. v. Pfizer, Inc.,* 395 F.3d 1324, 1332 (Fed.Cir.2005). The Supreme Court in *MedImmune* rejected the first prong, the "reasonable apprehen-sion" test, as unduly restrictive. "The Court explained in MedImmune that whether a declaratory judgment action presents an Article III controversy must be determined based on 'all the circumstances,' not merely on whether the declaratory judgment plaintiff is under a reasonable apprehension of suit." *Caraco Pharm. Labs., Ltd. v. Forest Labs., Ltd.,* 527 F.3d 1278, 1288 (Fed.Cir.2008) (quoting *MedImmune,* 127 S.Ct. at 771).

Following *MedImmune,* the Federal Circuit Court of Appeals made clear that

> [D]eclaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee. But Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do.... [W]here a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.

*SanDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372, 1380–81 (Fed.Cir.2007).

Considering all the circumstances, the court finds that Ag Leader has a right to proceed. This is not a situation where Ag Leader has only some vague knowledge that NTech has a patent for a similar product and seeks a premature, advisory opinion. Rather, NTech has asserted its rights as a patent-holder against the devel-

opment of Holland's product, which Ag Leader intends to distribute. Further, Ag Leader has taken active steps towards the distribution of Holland's product. Specifically, they have manufactured and begun testing the sensor system in Iowa cornfields and they have hired an agronomist to assist in the development of Holland's sensors. (*See* Declaration of Allen Meyers; Declaration of Roger Zielke). Therefore, based on NTech's act of suing Holland, as well as the active steps Ag Leader has taken to distribute Holland's sensors, Ag Leader is "in the position of either pursuing arguably illegal behavior or abandoning that which [it] claims a right." *Id.* Therefore, an immediate case or controversy exists.

Upon the foregoing,

**IT IS ORDERED**

That the Defendant's June 30, 2008, Motion to Dismiss (Dkt. No. 13) is granted. This case is dismissed without prejudice.